Opinion for the Court filed by Circuit Judge RANDOLPH.
 

 
 *-1528
 
 RANDOLPH, Circuit Judge:
 

 This appeal arises out of ongoing grand jury proceedings. The grand jury is investigating violations of federal election laws. The record is sealed. The appellant is a corporation, which we shall call the “Company.” The Company refused to produce two subpoenaed documents, for which it was held in contempt. One of the documents is a memorandum from a Company vice president to the president, with a copy to the Company’s general counsel. The memorandum reflects a conversation between the vice president and the Company’s general counsel about campaign finance laws. The Company withheld it on the basis of the attorney-client privilege. The other document is a memorandum written by the general counsel, apparently at the request of outside counsel. The Company withheld it on the basis of the attorney-client privilege and work product immunity.
 

 The district court examined both documents
 
 in camera (see United States v. Zolin,
 
 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989)), and, without deciding whether they were covered by the privilege or the work product doctrine, ordered the Company to turn them over. The court found that the crime-fraud exception applied because of these circumstances. In late June 1994, the Company’s political action committee contributed the maximum amount permitted by law to a former candidate for federal office who was seeking to retire his campaign debt. The vice president wrote his memorandum and had his discussion with the general counsel in early August 1994. Later in the same month, the vice president called two individuals who did business with the Company and asked them to contribute to the former candidate. The individuals and their wives made the contributions. After several weeks had passed, the vice president authorized checks to be drawn from his department’s budget to reimburse these individuals not only for the amount of their contributions, but also to make up for the additional taxes they would incur from reporting the reimbursement as income. The vice president’s solicitation may have been permissible but, according to the government, this use of corporate funds was illegal.
 

 The other subpoenaed document — the general counsel’s memorandum to the file — was written more than a year later. It mentions dates in November 1995, and according to the Company’s appellate counsel, recites actions the Company took to correct the vice president’s use of corporate funds to reimburse the donors.
 

 In addition to appealing from the order to produce the documents and the contempt citation, the Company appeals the district court’s order compelling the vice president to testify in the grand jury about a late August 1994 meeting between him, the Company’s president, and its general counsel. The participants at the meeting discussed certain facts and the general counsel gave legal advice about federal election laws. In the grand jury, the vice president — who had been granted immunity — invoked the attorney-client privilege on behalf of the Company. Again, the district court ruled that the crime-fraud exception applied and ordered him to testify about the late August 1994 meeting. The vice president then signed an affidavit stating that he would honor the court’s directive. The court stayed its order pending the outcome of the Company’s appeal.
 
 [1]
 

 I
 

 We will take up first the vice president’s early August 1994 memorandum and his meeting in late August 1994 with the president and general counsel. Both the memorandum and the meeting, as the Company sees it, are covered by the attorney-client privilege. Since the district court has yet to pass on this question, we will assume the Company is correct. The “privilege of a witness,” Fed.R.Evid. 501 tells us, is “gov-
 
 *-1527
 
 emed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience.” Those principles recognize the importance of maintaining the confidentiality of attorney-client communications in order to promote the rendering of legal services. In modern society, legal advice and assistance is often essential. To provide effective representation, attorneys need “full and frank” disclosures from their clients.
 
 Upjohn Co. v. United States,
 
 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981). Clients, it has been thought, might not be forthright if their lawyers could be turned into witnesses against them or if they could be forced to disclose their conversations with their lawyers.
 

 The relationship between client and counsel may, however, be abused. And so the attorney-client privilege is subject to what is known as the crime-fraud exception. Two conditions must be met. First, the client must have made or received the otherwise privileged communication with the intent to further an unlawful or fraudulent act.
 
 [2]
 

 In re Sealed Case,
 
 754 F.2d 395, 399 (D.C.Cir.1985)
 
 (Sealed Case II); United States v. White,
 
 887 F.2d 267, 271 (D.C.Cir. 1989). Second, the client must have carried out the crime or fraud. In other words, the exception does not apply even though, at one time, the client had bad intentions. Otherwise “it would penalize a client for doing what the privilege is designed to encourage— consulting a lawyer for the purpose of achieving law compliance.”
 
 See
 
 Restatement op the Law GoveRning Lawyers § 142 cmt. c, at 461 (Proposed Final Draft No. 1, 1996).
 
 [3]
 

 The privilege is the client’s, and it is the client’s fraudulent or criminal intent that matters. A third party’s bad intent cannot remove the protection of the privilege.
 
 [4]
 
 For example, a stenographer hired to record a meeting between an attorney and a client might intend to use his notes to commit some kind of crime — say extortion — but the contents of the meeting would not therefore cease to be privileged. Otherwise, existence of the attorney-client privilege would be unpredictable and the interest of “full and frank communication” between client and counsel would be undermined.
 
 See Upjohn Co.,
 
 449 U.S. at 389, 101 S.Ct. at 682.
 
 [5]
 

 As the party seeking to overcome the privilege, the government had the burden of showing that the crime-fraud exception applied to the memorandum and the meeting. What was the nature of that burden? Here we encounter some confusion. This court and others have described the required showing in terms , of establishing a “prima facie” case.
 
 See, e.g., Sealed Case II,
 
 754 F.2d at 399. The formulation can be traced to the Supreme Court’s opinion, in
 
 Clark v. United States,
 
 289 U.S. 1, 14, 53 S.Ct. 465, 469, 77 L.Ed. 993 (1933). The problem is, as the Supreme Court mentioned in
 
 Zolin,
 
 491 U.S. at 563 n. 7, 109 S.Ct. at 2626 n. 7, that
 
 *-1526
 
 “prima facie” evokes the concept, familiar in civil litigation, of shifting the burden from one party to another. Yet it is altogether clear where the burden in these cases lies— on the party invoking the crime-fraud exception. In terms of the level of proof, is a “prima facie showing” a preponderance of the evidence, clear and convincing evidence, or something else?
 

 Our opinion in
 
 Sealed Case II
 
 contains this answer: “The government satisfies its burden of proof if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud.” 754 F.2d at 399. We appended a footnote to this statement explaining that although the Second Circuit had “fi’amed the test in terms of probable cause to believe that a crime or fraud had been committed and that the communications were in furtherance thereof’
 
 (see In re John Doe Corp.,
 
 675 F.2d 482, 491 & n. 7 (2d Cir.1982)), there was “little practical difference” between that standard and the one just quoted from
 
 Sealed Case II.
 
 754 F.2d at 399 n. 3. We confess some difficulty in understanding why the differences between the' two formulations were considered slight, but there is no reason to dwell on the matter.
 
 [6]
 
 It is apparent here that the government failed to make the sort of probable cause showing the Second Circuit would demand, or the showing
 
 Sealed Case II
 
 contemplated.
 

 The critical consideration is that the government’s presentation had to be aimed at the intent and action of the client. It was not enough for the government to show that the vice president committed a crime after he wrote his memorandum and attended the late August meeting with Company counsel. The holder of the privilege is the client and, in this case, the client was the Company, not the vice president. Unless the government made some showing that the Company intended to further and did commit a crime, tile government, could not invoke the crime-fraud exception to the privilege.
 

 As to the late August meeting, the government’s evidence reveals that the participants discussed campaign finance laws. That is not enough. One cannot reasonably infer from the meeting that the Company was consulting its general counsel with the intention of committing a crime, or even that the vice president was then doing so. Companies operating in today’s complex legal and regulatory environments routinely seek legal advice about how to handle all sorts of matters, ranging from their political activities to their employment practices to transactions that may have antitrust consequences. There is nothing necessarily suspicious about the officers of this corporation getting such advice. True enough, within weeks of the meeting about campaign finance law, the vice president violated that law. But the government had to demonstrate that the Company sought the legal advice with the intent to further its illegal conduct. Showing temporal proximity between the communication and a crime is not enough.
 
 Sealed Case II,
 
 754 F.2d at 402;
 
 In re Grand Jury Subpoenas Duces Tecum,
 
 798 F.2d 32, 34 (2d Cir. 1986).
 

 Moreover, from the material before the district court, there was no way of knowing or even guessing whether the vice president was on a frolic of his own, against the advice of Company counsel, when he reimbursed the donors with corporate funds. The government suggested at oral argument that even if he was, the Company still could be held criminally liable. There are circumstances under which corporations are responsible for the crimes of their agents.
 
 See, e.g., United States v. Sherpix, Inc.,
 
 512 F.2d 1361, 1367
 
 &
 
 n. 7 (D.C.Cir.1975);
 
 New York Cent & Hudson River R.R. v. United States,
 
 212 U.S. 481, 29 S.Ct. 304, 53 L.Ed. 613 (1909); RICHARD S. GRUNER, CORPORATE CRIME AND
 
 *-1525
 
 SENTENCING ch. 8 (1994). But neither in this court nor in the district court did the government offer anything in terms of evidence or law to support the idea that the Company bore criminal responsibility for the acts of this officer.
 
 Cf. Egan v. United States,
 
 137 F.2d 369, 378-80 (8th Cir.1943). The government therefore did not sustain its burden. In so holding, we express no view on the Company’s ultimate criminal liability. The law of corporate criminality is not well developed in this circuit. Given the government’s complete failure to address the subject, this is not the case to develop it.
 

 Many of the same points can be made about the vice president’s memorandum. Like the district court, we have examined this document, which the Company submitted
 
 in camera
 
 and
 
 ex parte.
 
 From the memorandum and the other information the government presented, all that can be discerned is that the Company’s vice president and its general counsel discussed federal election laws in early August 1994, perhaps at the suggestion of the Company’s president. The memorandum reflected that discussion. Again, given the need for corporations and their officers to seek legal advice about activities like political contributions, there is nothing suspect about this discussion. And the fact that the vice president broke the law weeks later does not, without more, demonstrate the validity of the government’s assumption that the Company intended or probably intended to further that crime.
 

 II
 

 This brings us to the second of the two documents the Company withheld. We have examined the document. It is a memorandum by the Company’s general counsel, written to the file and relating to matters that occurred one year after the vice president’s illegal action. As Company counsel seemed to agree at oral argument, the document is covered by work product immunity rather than the attorney-client privilege. The protection for attorney work product is broader than the attorney-client privilege, but less absolute. Work product immunity covers not only confidential communications between the attorney and client. It also attaches to other materials prepared by attorneys (and their ágents) in anticipation of litigation.
 
 Cf.
 
 Fed.R.Civ.P. 26(b)(3). Like the attorney-client privilege, work product immunity promotes the rendering of effective legal services.
 
 See Hickman v. Taylor,
 
 329 U.S. 495, 510-11, 67 S.Ct. 385, 393-94, 91 L.Ed. 451 (1947). And as with the privilege, the interests in favor of work product immunity are overcome when the client uses the attorney to further a crime or fraud.
 
 See In re Sealed Case,
 
 676 F.2d 793, 811, 812 (D.C.Cir.1982)
 
 (Sealed Case
 
 I); 1 Scott N. Stone & Robert K. Taylor, Testimonial Privileges § 2.11, at 2-67 & n.284 (2d ed.1993) (collecting cases).
 

 With respect to work product immunity, the crime-fraud exception calls for a somewhat different inquiry than with the attorney-client privilege. The focus is not on the client’s intent regarding a particular communication, but on the client’s intent in consulting the lawyer or in using the materials the lawyer prepared. The question is: Did the client consult the lawyer or use the material for the purpose of committing a crime or fraud?
 
 [7]
 

 In light of these principles, the government’s argument for invoking the crime-fraud exception goes nowhere. As is apparent from the nature of the inquiry, the crime-fraud exception for work product immunity cannot apply if the attorney prepared the material after his client’s wrongdoing ended.
 
 See, e.g., Zolin,
 
 491 U.S. at 562-63, 109 S.Ct. at 2625-27;
 
 Sealed Case II,
 
 754 F.2d at 402;
 
 In re Grand Jury Subpoena 92-1(SJ),
 
 31 F.3d 826, 831 (9th Cir.1994);
 
 In re Federal Grand Jury Proceedings 89-10(MIA),
 
 938 F.2d 1578, 1581 (11th Cir.1991). Here, the general counsel wrote the memorandum long after the vice president commit
 
 *-1524
 
 ted the offenses. The government points out that work product might still be in furtherance of a crime or fraud even if the client’s original offense was complete. The client could be using the attorney to cover up or conceal his first crime. The trouble is that the government has made no such allegation here and, even if it did, we have spotted nothing in the record that would support it. And if the government cannot show that the Company or any of its officers tried to or intended to cover up the vice president’s illegality, it surely cannot show that the Company used its general counsel for that purpose.
 

 The district court decided this case by assuming that the meeting and the memoran-da fell under either the attorney-client privilege or the work product doctrine and then finding that the crime-fraud exception applied. Since we disagree with the district court’s conclusions regarding the crime-fraud exception, we reverse and remand the case.
 

 So Ordered.
 

 [1]
 

 . An order compelling testimony is not generally appealable unless the witness refuses to comply and is held in contempt. But under
 
 Perlman v. United States,
 
 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), the Company, as holder of the privilege, may appeal so long as the witness swears he will give the testimony.
 
 See In re Sealed Case,
 
 754 F.2d 395, 399 (D.C.Cir.1985)
 
 (Sealed Case II).
 

 [2]
 

 . In nearly all cases, a client's innocence will bar application of the crime-fraud exception. We say "nearly all” because there may be rare cases — this is not one of them — in which the attorney's fraudulent or criminal intent defeats a claim of privilege even if the client is innocent.
 
 See, e.g., Moody v. IRS,
 
 654 F.2d 795, 800-01 (D.C.Cir.1981);
 
 In re Impounded Case (Law Firm),
 
 879 F.2d 1211, 1213-14 (3d Cir.1989).
 

 [3]
 

 . To this the Restatement drafters added: "By the same token, lawyers might be discouraged from giving full and candid advice to clients about legally questionable courses of action.”
 
 Id.
 
 This seems to us rather doubtful. Why would a lawyer put his client — and himself — at such risk? Fully advising the client may prevent possibly unlawful action. On the other hand, if the lawyer gives less than "full and candid” advice, the client may rely on it, wind up violating the law and thus lose the privilege anyway. A lawyer representing such a client would have reason to be concerned about his own personal civil and criminal liability. Rather than discouraging full advice, that prospect plus the danger to the client provides a strong incentive for the lawyer to advise the client clearly and firmly.
 

 [4]
 

 . Of course, in many cases, a third party’s access to a communication may destroy the confidentiality required for the attorney-client privilege,
 
 see, e.g., In re Sealed Case,
 
 877 F.2d 976, 980 (D.C.Cir.1989)
 
 (Sealed Case III),
 
 but that is a separate problem.
 

 [5]
 

 . At least one district court seems to have said that anyone’s use of a communication to further a crime or fraud defeats the attorney-client privilege, regardless of the innocence of the attorney and the client.
 
 See Duttle v. Bandler & Kass,
 
 127 F.R.D. 46, 53, 55-56 (S.D.N.Y.1989). We think this is incorrect.
 

 [6]
 

 .
 
 Zolin
 
 left the standard of proof question for another day. The Supreme Court decided only that the crime-fraud exception need not be established entirely with independent evidence; that courts may review allegedly privileged materials
 
 in camera
 
 in order to determine whether the crime-fraud exception applies, 491 U.S. at 565-70, 109 S.Ct. at 2627-30; and that before "engaging in
 
 in camera
 
 review ..., the judge should require a showing-of a factual basis adequate to support a good faith belief by a reasonable person that
 
 in camera
 
 review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies,”
 
 id.
 
 at 572, 109 S.Ct. at 2631 (internal quotation marks and citation omitted).
 

 [7]
 

 . So long as the client had the requisite intent, the proposed Restatement removes work product immunity — but not the attorney-client privilege— even if the client never carries out the crime or fraud.
 
 Compare
 
 § 132 with § 142 of the ReSTATEMENT OF THE Law GOVERNING LAWYERS,
 
 SUpfa.
 
 Why the crime-fraud exception differs in these two contexts is not explained in the draft’s commentary or in the reporter’s notes.