United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed December 1, 1998

 No. 98-3052

 In re: Sealed Case

 Consolidated with 

 Nos. 98-3053 & 98-3059

 

 BEFORE: Ginsburg, Randolph, and Tatel, Circuit Judges.

 O R D E R

 Upon consideration of the responses of Francis D. Carter 
and of the United States of America, acting through the 
Office of the Independent Counsel, to the Court's order to 
show cause why the opinion in this case should not be 
unsealed, it is

 ORDERED, that the opinion in this case is no longer 
protected from public disclosure by Rule 6(e), Fed. R. Crim. 
P., in view of the public release, by the House Committee on 
the Judiciary, of Mr. Carter's grand jury testimony tran-
script, see H.R. Doc. 105-316, at 393-433 (Sept. 28, 1998); and 
it is further

 ORDERED, that the judgment and opinion of this Court in 
In re: Sealed Case, No. 98-3052 (D.C. Cir. May 26, 1998), 
shall be unsealed; and it is further
 ORDERED, that the order to show cause is discharged; 
and it is further
 ORDERED, pursuant to this Court's Local Rule 47.1(c), 
that the following materials also shall be unsealed:
 1. Motion of the United States of America for Summary 
Dismissal of Appeal of Francis D. Carter, Esq., for Want of 
Jurisdiction (May 1, 1998);
 2. Motion of the United States of America to Expedite 
Consideration of the Appeal and for an Abbreviated Briefing 
Schedule (May 1, 1998);

 3. Motion of Francis D. Carter for Extension of Time to 
File Opposition to Motion for Summary Dismissal and Motion 
to Set Briefing Schedule (May 5, 1998);

 4. Response of the United States of America to Motion for 
Extension of Time to File Opposition to Motion for Summary 
Dismissal and Motion to Set Briefing Schedule (May 5, 1998);

 5. Order of this Court granting motion to expedite and 
setting briefing schedule (May 5, 1998);

 6. Brief of Cross-Appellant United States (May 11, 1998);

 7. Cross-Appellant's Appendix (May 11, 1998);

 8. Brief for Appellant Francis D. Carter, Esq. (May 11, 
1998);

 9. Appendix for Appellant Francis D. Carter, Esq. (May 
11, 1998);

 10. Opening Brief of Appellant Monica Lewinsky (May 11, 
1998);

 11. Appendix of Appellant Monica Lewinsky (May 11, 
1998);

 12. Request for Judicial Notice by Appellant Monica Lew-
insky (May 11, 1998);

 13. Brief of Appellee United States (May 14, 1998);

 14. Brief for Cross-Appellee Francis D. Carter, Esq. 
(May 14, 1998);

 15. Reply Brief for Appellant Francis D. Carter, Esq. 
(May 15, 1998);

 16. Reply Brief of Appellant Monica Lewinsky (Lodged 
May 15, 1998);

 17. Reply Brief of Cross-Appellant United States (May 
15, 1998);

 18. Motion to Night File Reply Brief of Monica Lewinsky 
(May 19, 1998);

 19. Order of this Court granting leave to file lodged reply 
brief out of time (May 26, 1998);

 20. Order of this Court to show cause why the opinion in 
this case should not be unsealed (Nov. 16, 1998);

 21. Response of the United States of America to the 
November 16, 1998 Order to Show Cause (Nov. 23, 1998);

 22. Response of Francis D. Carter to Order to Show 
Cause Why Opinion Should Not Be Unsealed and Motion to 
Unseal Entire Record (Nov. 23, 1998).

 Per Curiam

 
United States Court of Appeals

 FOR THE DISTRICT OF COLUMBIA CIRCUIT

 Filed May 26, 1998

 No. 98-3052

 In re: Sealed Case

 Consolidated with 

 Nos. 98-3053 & 98-3059

 Appeals from the United States District Court 

 for the District of Columbia 

 (98ms00068)

 Nathaniel H. Speights filed the briefs for appellant Monica 
Lewinsky.

 Charles J. Ogletree, Jr. filed the briefs for appellant Fran-
cis D. Carter, Esq.

 Robert J. Bittman, Deputy Independent Counsel, filed the 
briefs for cross-appellant the United States.

 Before: Ginsburg, Randolph, and Tatel, Circuit Judges.

 Opinion for the Court filed by Circuit Judge Randolph.

 Randolph, Circuit Judge: In 1997, Monica S. Lewinsky, a 
former White House intern, received a subpoena to produce 

items and to testify in Paula Jones v. William Jefferson 
Clinton, a civil matter then pending in the United States 
District Court for the Eastern District of Arkansas. The 
subpoena requested, among other things, documents relating 
to an alleged relationship between President Clinton and 
Lewinsky and any gifts the President may have given her. 
Lewinsky retained Francis D. Carter, Esq., to represent her 
regarding the subpoena.

 Carter drafted an affidavit for Lewinsky, which she signed 
under penalty of perjury. The affidavit, submitted to the 
Arkansas district court as an exhibit to Lewinsky's motion to 
quash the subpoena, states in relevant part:

 I have never had a sexual relationship with the Presi-
 dent, [and] he did not propose that we have a sexual 
 relationship.... The occasions that I saw the President 
 after I left my employment at the White House in April, 
 1996, were official receptions, formal functions or events 
 related to the U.S. Department of Defense, where I was 
 working at the time. There were other people present 
 on those occasions.

 On January 16, 1998, at the request of the Attorney 
General, a Special Division of this Court expanded the juris-
diction of the Office of Independent Counsel to include "au-
thority to investigate ... whether Monica Lewinsky or others 
suborned perjury, obstructed justice, intimidated witnesses, 
or otherwise violated federal law ... in dealing with wit-
nesses, potential witnesses, attorneys, or others concerning 
the civil case Jones v. Clinton." Order of the Special Divi-
sion, Jan. 16, 1998. On February 2 and 9, 1998, as part of 
that investigation, a grand jury issued subpoenas to Carter, 
the first for documents and other items, the second for his 
testimony. Carter moved to quash the subpoenas, contend-
ing, inter alia, that the documents, testimony, and other 
items sought were protected from disclosure by the attorney-
client privilege, the work-product privilege, and Lewinsky's 
Fifth Amendment privilege against self-incrimination. Lew-
insky, as the real-party-in-interest, filed a response in support 
of Carter's motion. The United States opposed the motion, 


arguing among other things that the crime-fraud exception 
vitiated any claims of attorney-client or work-product privi-
lege and that the Fifth Amendment did not bar production of 
the requested materials. The district court ordered Carter to 
comply with the two grand jury subpoenas except to the 
extent that compliance would "call for him to disclose materi-
als in his possession that may not be revealed without violat-
ing Monica S. Lewinsky's Fifth Amendment rights."

 Carter and Lewinsky argue in separate appeals that the 
district court erred in rejecting their motions to quash the 
grand jury subpoenas in their entirety. In its cross-appeal, 
the United States, through the Office of Independent Coun-
sel, claims that the Fifth Amendment does not bar production 
of any of the materials the grand jury subpoenaed from 
Carter.

 We dismiss Carter's appeal for want of jurisdiction. Well-
settled law dictates that "one to whom a subpoena is directed 
may not appeal the denial of a motion to quash that subpoena 
but must either obey its commands or refuse to do so and 
contest the validity of the subpoena if he is subsequently cited 
for contempt on account of his failure to obey." United 
States v. Ryan, 402 U.S. 530, 532 (1971); see Cobbledick v. 
United States, 309 U.S. 323, 328 (1940); In re Sealed Case, 
107 F.3d 46, 48 n.1 (D.C. Cir. 1997). Rather than risking 
contempt, Carter has sworn that he will comply with the 
subpoenas if ordered to do so.1

 Our jurisdiction over Lewinsky's appeal is another matter. 
Lewinsky is the holder of the privilege. Given Carter's 
sworn declaration that he will give testimony if ordered, she 
is entitled to appeal the district court's ruling rejecting Car-

__________
 1 In addition to adopting Lewinsky's arguments regarding the 
crime-fraud exception, Carter claims that the subpoenas are over-
broad, unreasonable, and oppressive and that the district court's 
reliance on the Independent Counsel's ex parte submissions in 
enforcing the subpoenas violated due process. Contrary to Carter's 
contention, the issues he seeks to present are thus neither "virtually 
identical" to, nor "inextricably intertwined" with, those Lewinsky 
raises.

ter's assertion of the privilege. See In re Sealed Case, 107 
F.3d at 48 n.1.

 The district court held that the crime-fraud exception to 
the attorney-client privilege applied. After reviewing the 
government's in camera submission, the court found that 
"Ms. Lewinsky consulted Mr. Carter for the purpose of 
committing perjury and obstructing justice and used the 
material he prepared for her for the purpose of committing 
perjury and obstructing justice."2 Lewinsky tells us she 
could not have committed either crime: the government could 
not establish perjury because her denial of having had a 
"sexual relationship" with President Clinton was not "materi-
al" to the Arkansas proceedings within the meaning of 18 
U.S.C. s 1623(a); and her affidavit containing this denial 
could not have constituted a "corrupt[ ] ... endeavor[ ] to 
influence" the Arkansas district court within the meaning of 
18 U.S.C. s 1503. Both of Lewinsky's propositions rely on 
the Arkansas district court's ruling on January 30, 1998, after 
Lewinsky had filed her affidavit, that although evidence con-
cerning Lewinsky might be relevant, it would be excluded 
from the civil case under Fed. R. Evid. 403 as unduly prejudi-
cial, "not essential to the core issues in th[e] case," and to 
prevent undue delay resulting from the Independent Coun-
sel's investigation.3

 A statement is "material" if it "has a natural tendency to 
influence, or was capable of influencing, the decision of the 
tribunal in making a [particular] determination." United 
States v. Barrett, 111 F.3d 947, 953 (D.C. Cir.), cert. denied, 
118 S. Ct. 176 (1997). The "central object" of any materiality 
inquiry is "whether the misrepresentation or concealment was 
predictably capable of affecting, i.e., had a natural tendency 

__________
 2 The district court did not find, nor did the Independent Counsel 
suggest, any impropriety by Carter.

 3 Lewinsky does not appear to contest directly the district court's 
finding that she made one or more false statements in her sworn 
affidavit. Even so, we have independently reviewed the in camera 
materials considered by the district court and conclude that suffi-
cient evidence existed to support the court's finding.

to affect, the official decision." Kungys v. United States, 485 
U.S. 759, 771 (1988). Lewinsky used the statement in her 
affidavit, quoted above, to support her motion to quash the 
subpoena issued in the discovery phase of the Arkansas 
litigation. District courts faced with such motions must 
decide whether the testimony or material sought is reason-
ably calculated to lead to admissible evidence and, if so, 
whether the need for the testimony, its probative value, the 
nature and importance of the litigation, and similar factors 
outweigh any burden enforcement of the subpoena might 
impose. See Fed. R. Civ. P. 26(b)(1), 45(c)(3)(A)(iv); Linder v. 
Department of Defense, 133 F.3d 17, 24 (D.C. Cir. 1998); see 
generally 9A Charles Alan Wright & Arthur R. Miller, 
Federal Practice and Procedure s 2459 (2d ed. 1995). 
There can be no doubt that Lewinsky's statements in her 
affidavit were--in the words of Kungys v. United States--
"predictably capable of affecting" this decision. She executed 
and filed her affidavit for this very purpose.

 As to obstruction of justice, 18 U.S.C. s 1503 is satisfied 
whenever a person, with the "intent to influence judicial or 
grand jury proceedings," takes actions having the "natural 
and probable effect" of doing so. United States v. Aguilar, 
515 U.S. 593, 600 (1995) (citations and quotation marks omit-
ted); see United States v. Russo, 104 F.3d 431, 435-36 (D.C. 
Cir. 1997). Our review of the in camera materials on which 
the district court based its decision convinces us that the 
government sufficiently established the elements of a viola-
tion of s 1503. That is, the government offered "evidence 
that if believed by the trier of fact would establish the 
elements of" the crime of obstruction of justice. In re Sealed 
Case, 107 F.3d at 50 (citation and quotation marks omitted); 
see In re Sealed Case, 754 F.2d 395, 399-400 (D.C. Cir. 1985) 
(same).

 Lewinsky maintains that the district court erred in treat-
ing, as admissible for in camera review, transcripts of taped 
conversations between Lewinsky and Linda Tripp. She relies 
on the following statement in United States v. Zolin, 491 U.S. 
554, 575 (1989): "the threshold showing to obtain in camera 
review may be met by using any relevant evidence, lawfully 


obtained, that has not been adjudicated to be privileged." 
Zolin, and the statement just quoted, dealt with a rather 
different problem than the one presented here. Sometimes a 
party seeking to overcome the privilege by invoking the 
crime-fraud exception asks the district court to examine in 
camera the privileged material to determine whether it pro-
vides evidence of a crime. The issue Zolin addressed is 
under what circumstances a district court should undertake 
such in camera review. Zolin's answer, as the quotation 
indicates, was that the court should do so only when there has 
been a threshold showing through evidence lawfully obtained. 
See In re Grand Jury Proceedings, 33 F.3d 342, 350 (4th Cir. 
1994). In this case, the district court reviewed in camera not 
the allegedly privileged material, but other evidence intended 
to establish that the crime-fraud exception applied. In any 
event, even if Zolin applied, Lewinsky gains nothing from the 
decision. She maintains that the Tripp tapes were not "law-
fully obtained" and therefore should not have been considered 
in camera. But the government satisfied its burden wholly 
apart from the Tripp tapes. Other government evidence--
consisting of grand jury testimony and documents--estab-
lished that the crime-fraud exception applied. Because that 
other evidence, if believed by the trier of fact, combined with 
the circumstances under which Lewinsky retained Carter, 
would establish the elements of the crime-fraud exception, 
there is no reason for us to consider her arguments about the 
tapes.4

 Lewinsky raises other objections to the district court's 
decision, including the argument that production of the sub-

__________
 4 Lewinsky's brief suggests, in a short passage, that other evi-
dence obtained by the grand jury is tainted by the alleged illegality 
of the Tripp tapes. United States v. Callandra, 414 U.S. 338 (1974), 
refused to extend the exclusionary rule--and hence doctrines such 
as the fruit-of-the-poisonous-tree--to grand jury proceedings. No 
grand jury witness may refuse to answer questions on the ground 
that the questions are based on illegally obtained evidence. See 414 
U.S. at 353-55. It follows that regardless of the legality of the 
Tripp tapes, the grand jury did not unlawfully obtain the other 
evidence presented to the district court in camera.

poenaed materials would violate her Fifth Amendment privi-
lege against self-incrimination. Our resolution of the cross-
appeal, discussed next, disposes of that claim. As to the 
remainder of Lewinsky's arguments, we have accorded each 
of them full consideration and conclude that none has merit.5

 This brings us to the Independent Counsel's cross-appeal. 
The district court ruled that compelling Carter to produce 
materials his client gave him would violate Lewinsky's Fifth 
Amendment privilege because it would compel her to admit 
the materials exist and had been in her possession. The 
Supreme Court foreclosed that line of reasoning in Fisher v. 
United States, 425 U.S. 391 (1976). Documents transferred 
from the accused to his attorney are "obtainable without 
personal compulsion on the accused," and hence the accused's 
"Fifth Amendment privilege is ... not violated by enforce-
ment of the [subpoena] directed toward [his] attorneys. This 
is true whether or not the Amendment would have barred a 
subpoena directing the [accused] to produce the documents 
while they were in his hands." Id. at 398, 397; see also 
Couch v. United States, 409 U.S. 322, 328 (1973).

 Regardless whether Lewinsky herself would have been able 
to invoke her Fifth Amendment privilege, but see Andresen v. 
Maryland, 427 U.S. 463, 473-74 (1976), the district court's 
refusal to order full compliance with the subpoenas could be 
sustained only if the materials sought fell under a valid claim 
of attorney-client privilege. See Fisher, 425 U.S. at 403-05; 
see also In re Feldberg, 862 F.2d 622, 629 (7th Cir. 1988). 
But the district court held, correctly, that no valid attorney-
client privilege existed. Under Fisher, the district court 
therefore should have denied the motions to quash in their 
entirety.6

__________
 5 In her reply brief, Lewinsky argues for the first time that the 
district court should have permitted her to examine the material the 
court reviewed in camera. This argument comes too late to be 
considered. See Rollins Envtl. Servs. (NJ) Inc. v. EPA, 937 F.2d 
649, 652 n.2 (D.C. Cir. 1991).

 6 As respondent in the cross-appeal, Carter makes additional 
arguments against the applicability of the crime-fraud exception. 
But because the only issue in the cross-appeal is the applicability of 

 Accordingly, we affirm in part and reverse in part the 
order of the district court and remand the case for proceed-
ings consistent with this opinion. No. 98-3053 is dismissed. 
The mandate shall issue seven days after the date of this 
opinion. See Fed. R. App. P. 41(a); D.C. Cir. R. 41(a)(1); 
Johnson v. Bechtel Assocs. Prof'l Corp., 801 F.2d 412, 415 
(D.C. Cir. 1986); Public Citizen Health Research Group v. 
Auchter, 702 F.2d 1150, 1159 n.31 (D.C. Cir. 1983).

 So ordered.

__________
the Fifth Amendment, Carter may not use the cross-appeal to press 
arguments we will not consider in his direct appeal. See Grimes v. 
District of Columbia, 836 F.2d 647, 651-52 (D.C. Cir. 1988).