**Cara Leslie ALEXANDER, et al., Plaintiffs,**

v.

**FEDERAL BUREAU OF INVESTIGATION, et al., Defendants.**

**Nos. 96–2123 (RCL), 97–1288(RCL).**

United States District Court, District of Columbia.

Jan. 24, 2000.

Larry Klayman, Judicial Watch, Inc., Washington, D.C., for plaintiffs.

David W. Ogden, Acting Assistant Attorney General, Wilma A. Lewis, United States Attorney, Anne Weismann, James J. Gilligan, Elizabeth Shapiro, U.S. Department of Justice, Washington, D.C., David E. Kendall, Marcie Ziegler, Williams & Connolly, Washington, D.C., Ira Raphaelson, Elizabeth Delaney, O'Melveny & Myers, L.L.P., Washington, D.C., for defendant.

### MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on Plaintiffs' Motion to Compel Further Testimony of Larry Potts and for Further Relief as the Court Deems Just and Proper. Upon consideration of this motion, its corresponding oppositions and the reply thereto, and the relevant law, the court will GRANT in part and DENY in part Plaintiffs' Motion to Compel Further Testimony· of Larry Potts and for Further Relief as the Court Deems Just and Proper, as discussed and ordered below.

### I. Background

The underlying allegations in this case arise from what has become popularly known as "Filegate." Plaintiffs allege that their privacy interests were violated when the FBI improperly handed over to the White House hundreds of FBI files of former political appointees and government employees under the Reagan and Bush Administrations.

The instant dispute revolves around the deposition of Larry Potts, the former Director of the Criminal Division of the FBI during the time period pertinent to the afore-

mentioned allegations. Potts, who is not a party in this matter, is now a corporate officer of Investigative Group International (IGI), a private investigation firm retained by the President and First Lady in connection with the Office of the Independent Counsel's investigation and the *Jones v. Clinton* matter. The issues raised by the pending motions and considered in this opinion arise from the intersection of Potts' roles as investigator and former FBI employee.

Plaintiffs previously filed before this court a Motion to Compel Further Testimony of Larry Potts and to Impose Sanctions. In response to that motion, President Clinton filed a motion for leave to intervene in his personal capacity. In his motion, President Clinton sought to protect his attorney-client and work-product privileges to the extent that any information sought might reveal privileged information relating to IGI's retention by the President's counsel. On March 31, 1999, this court entered an order denying the plaintiffs' motion to compel without prejudice due to their failure to comply with Local Rule 108(h) and their violation of a previous court order. *See Alexander v. FBI,* Civ. No. 96–2123, Memorandum and Order, at 4 (D.D.C. March 31, 1999). This order also granted President Clinton's Motion to Intervene. *See id.* at 6. Now, after discussions with opposing counsel, plaintiffs renew their motion to compel further testimony from Larry Potts, to which President Clinton again filed a partial opposition.

### II. Analysis

Plaintiffs seek to compel testimony on the following questions, to which Potts was instructed not to respond:

1. What contacts has Potts had with individuals or employees of the FBI since he began to work for IGI?

2. Has Potts or IGI been involved in investigating Linda Tripp?

3. Since September 1997, has Potts or anyone else at IGI had contact with Terry Good?

4. Since September 1997, has Potts or anyone else at IGI had contact with James Carville?

5. Since September 1997, has Potts or anyone else at IGI had contact with Jane Mayer?

6. Since September 1997, has Potts or anyone else at IGI had contact with Sidney Blumenthal?

7. Since September 1997, has Potts or anyone else at IGI had contact with Hillary Clinton?

8. Since September 1997, has Potts or anyone else at IGI had contact with President Clinton?

9. From September 1997 to present, has anyone at IGI received any documents from White House files?

10. From September 1997 to present, has Potts or anyone at IGI received from the White House copies of letters written by Kathleen Willey to the President?

11. From September 1997 to present, has Potts or anyone at IGI received any information from Linda Tripp's Pentagon file?

Plaintiffs seek to compel answers to these questions. Additionally, plaintiffs characterize these questions as "foundational" in nature and therefore ask the court to allow them to continue their deposition.

### A. *Relevance*

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action. . . . The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." FED.R.CIV.P. 26(b)(1). Consequently, the court may only grant plaintiffs' motion to compel to the extent that plaintiffs seek answers to questions on issues that are relevant or that are reasonably calculated to lead to the discovery of admissible evidence.

The court has already stated that plaintiffs should be allowed to probe the extent of Potts' knowledge with regard to the transmittal of FBI files from the FBI to the White House. *See Alexander v. FBI*, Civ. No. 96–2123, Memorandum and Order, at 7 (D.D.C. June 15, 1998). Potts, however, argues that plaintiffs' first question seeks irrelevant information.[1] The court finds that question 1, as well as all of the other questions, meet the relevance standard of FED.R.CIV.P. 26(b)(1). They all seek information that could lead to the discovery of admissible evidence. Therefore, the court will now turn to the issue of privileges.

### B. *Privileges*

Non-party Potts, and Intervenor Clinton assert privilege objections to the plaintiffs' questions based upon the attorney-client and work-product privileges.[2]

### (i) *attorney-client privilege*

Intervenor Clinton and Non-party Potts first object to all of the relevant questions on the ground of attorney-client privilege. These claims must be rejected because Intervenor Clinton has not met his burden of proving the applicability of the privilege.

■ The Court of Appeals for the District of Columbia Circuit has stated that the attorney-client privilege applies only when several elements are shown by the proponent of the attorney-client privilege:

---

1. Non–Party Potts further objects to question one on the grounds that compelling him to answer such a question would infringe upon his First Amendment right to freedom of association and his right to privacy. In support of his argument, Potts cites *NAACP v. Alabama ex. rel. Patterson*, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958) and *United States Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1264 (D.C.Cir.1973), *rev'd on other grounds*, 421 U.S. 491, 95 S.Ct. 1813, 44 L.Ed.2d 324 (1975). These cases, however, are inapposite. They deal solely with "[t]he right of voluntary associations, especially those engaged in activities which may not meet with popular favor, to be free from having either state or federal officials expose their affiliation and membership. . . ." *Eastland*, 488 F.2d at 1264. Question one, on the other hand, seeks only a list of contacts that Potts has had with the FBI since his departure, which does not require that Potts reveal his or anyone else's membership in any organization.

2. Intervenor Clinton alone objects to question one based on privilege. Non-party Potts' privilege objections pertain only to the remaining questions. Potts objects to question one solely on the grounds of relevance and on the basis that being compelled to answer would violate his right to privacy and freedom of association, both of which are discussed above.

(1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion of law or (ii) legal services or (iii) assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

*In re Sealed Case*, 737 F.2d 94, 98–99 (D.C.Cir.1984). By necessity, the privilege extends to certain communications between an attorney and an attorney's agent in certain circumstances. See *Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1514 (D.C.Cir.1993).

Intervenor Clinton reasons from these general principles that:

> [B]y answering whether or not IGI conducted specific investigations, contacted certain persons, or received any documents in connection with the [retention of Intervenor Clinton's attorneys], Mr. Potts would *necessarily* reveal the contents of communications between "privileged persons"—in this instance, communications between "the client's lawyer" and "agents of the lawyer for purposes of the representations."

Intervenor Clinton's Partial Opposition to Plaintiffs' Motion to Compel at 15 (emphasis added). Therefore, in Intervenor Clinton's view, Potts cannot be compelled to answer plaintiffs' questions. With this the court cannot agree.

■ First, Intervenor Clinton and Non-party Potts bear the burden of proving the factual applicability of the attorney-client privilege. Yet, they have not proven (or even specifically alleged), by *in camera* affidavit or otherwise, that the specific actions inquired about by plaintiffs' counsel were (or

were not) taken by Potts or IGI at the direction of a communication from the President's attorneys. Instead, Intervenor Clinton substitutes a *theory—i.e.,* that answering these questions would "necessarily" reveal the content of communications between the President's attorneys and Potts—for *facts—i.e.,* whether these communications did, in fact, occur.[3] The attorney-client privilege protects only confidential communications, and neither Clinton nor Potts provides a factual basis on which this court could find that such communications occurred. On this ground alone, these claims of attorney-client privilege must be rejected.

■ Second, Intervenor Clinton and Non-party Potts misinterpret the purpose of the attorney-client privilege and how the doctrine narrowly functions to protect that purpose. The purpose of the attorney-client privilege "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Specifically, "the purpose of the privilege [is] 'to encourage clients to make full disclosure to their attorneys.'" *Id.* (quoting *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976)). As the court of appeals for this circuit has stated, it "adheres to the axiom that the attorney-client privilege must be 'strictly confined within the narrowest possible limits consistent with the logic of its principle.'" *Resolution Trust Corp.,* 5 F.3d at 1514. Lest we forget the heart of this entire doctrine, the court notes that the lynchpin of the attorney-client privilege is that it protects confidential information which the client has previously confided to the attorney's trust. *See Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862 (D.C.Cir.1980); *Mead Data Central, Inc. v. United States Dep't of the Air Force,* 566 F.2d 242, 254 (D.C.Cir.1977).

---

**3.** Of course, if Intervenor Clinton was to suggest that the making of these communications is itself privileged—an argument which he does not make today—then the appropriate course would

be to submit affidavits *in camera* so that the court would have a factual basis to support such a holding, should it prove to be a valid argument.

Aside from the problem of proof already noted as to Intervenor Clinton's statement that plaintiffs' questions would necessarily intrude upon the substance of communications between Intervenor Clinton's attorneys and their representatives, this notion is further flawed for a second reason—it assumes that all such communications between these "privileged persons" are protected. This is an erroneous interpretation. Assuming these conversations occurred, Intervenor Clinton and Potts proffer no evidence by way of *in camera* affidavit or even bare assertion that any confidences of the client—President Clinton—were contained in these (assumed) communications between his attorneys and Potts or IGI. It is these confidential communications that the privilege protects in the first instance, and the law must derivatively protect communications between other groups of people—such as attorney to attorney representative—to allow clients to fully disclose information to their attorneys. But the privilege does not simply protect communications between an attorney and an investigator, as Intervenor Clinton and Potts argue, simply because "privileged persons" were hired to represent the client and they were discussing that representation. *See In re Sealed Case*, 737 F.2d at 98–99 (affording the protection of the attorney-client privilege only if "the communication relates to a fact of which the attorney was informed ... by his client."); *Mead Data Central, Inc. v. United States Dep't of the Air Force*, 566 F.2d 242, 254 (D.C.Cir. 1977). ("[T]he attorney-client privilege does extend to a confidential communication from an attorney to a client, but only if that communication is based on confidential information provided by the client." (citations omitted)); *see also* 24 CHARLES ALAN WRIGHT & KENNETH W. GRAHAM, JR., FEDERAL PRACTICE AND PROCEDURE § 5478, at 229 n. 179 ("[C]onversations the attorney has with his investigator are not privileged unless they would reveal a communication of the client because the investigation of facts is not 'professional legal services.'"). Intervenor Clinton's and Potts' argument misses the point that the attorney-client privilege focuses on the protection of confidential communications from the client, not all discussions among a group of people whom courts held may be entitled to claim the privilege.

For these two reasons, Intervenor Clinton's and Potts' claims of attorney-client privilege must be rejected. Having overruled these claims of attorney-client privilege, the court will now turn to the pending attorney work-product objections.

### (ii) *attorney work-product privilege*

Intervenor Clinton and Non-party Potts next object to all of the relevant questions on the basis of the attorney work-product privilege. Clinton and Potts contend that this privilege is implicated by plaintiffs' questions regarding whether Potts has performed specific investigations, obtained specific documents, or contacted specific individuals.

The "work product" now before the court must be classified as "intangible work product" because plaintiffs do not seek documents or tangible items. Instead, plaintiffs seek to learn about whether or not Potts has talked to certain individuals, received any information from certain places, or received certain information in his investigations done on behalf of Intervenor Clinton's attorneys.

To analyze an attorney work-product claim as to intangible work product, courts must look to the caselaw under *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), and its progeny and not to FED. R.CIV.P. 26(b)(3), which applies only to "documents and tangible things." *See United States v. One Tract of Real Property*, 95 F.3d 422, 428 n. 10 (6th Cir.1996); *Maynard v. Whirlpool Corp.*, 160 F.R.D. 85, 87 & n. 3 (S.D.W.V.1995).

The test for whether a claim of work-product privilege is viable is "whether, in light of the nature of the [intangible work product] and the factual situation in the particular case, the [information] can fairly be said to have been prepared or obtained because of the prospect of litigation." *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 n. 42 (D.C.Cir. 1987). There is no doubt, and plaintiffs make no claim to the contrary, that the investigative work done by Potts and IGI was done on behalf of the attorneys working for the President in anticipation of litigation. Similarly, there can be no doubt that if plain-

tiffs' questions were directed toward Intervenor Clinton's attorneys themselves, the attorney work-product privilege would surely preclude such testimony from being compelled to the extent such testimony would require answers revealing the opinions, impressions, or strategy of Intervenor Clinton's attorneys. For as the Supreme Court stated in *Hickman v. Taylor*:

> [A] lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways.... Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.

*Hickman*, 329 U.S. at 510, 67 S.Ct. at 393–94

This case presents a slightly different problem, however, in two respects. First, plaintiffs' counsel is asking these questions of an investigator hired by Intervenor Clinton's attorneys and not of the attorneys themselves. Second, it is not clear that answering these narrow questions would reveal any litigation strategy or attorney opinions.

The caselaw dealing with attorneys' investigators shows that they should generally be afforded the same protection as the attorneys for whom they work. The Supreme Court has addressed this issue with regard to documents prepared by investigators who are facilitating an attorney's representation of a client:

> At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case. But the doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system. One of those realities is that attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial. It is therefore necessary that the doctrine protect material prepared by agents for the attorney as well as those prepared by the attorney himself.

*United States v. Nobles*, 422 U.S. 225, 238–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975). Although *Nobles* involved an investigator's written report, which is tangible work product, *Hickman* clearly commands that the attorney work-product doctrine applies with equal, if not greater, force to intangible work product. *See Hickman*, 329 U.S. at 511, 67 S.Ct. at 394. Thus, in the circumstances of this case, to the extent plaintiffs' questions would be privileged if asked directly of the attorneys, they must be privileged when asked of the attorneys' investigator.

These legal principles, however, do not weigh in favor of Intervenor Clinton as heavily as his counsel would have the court believe. Once again, Intervenor Clinton relies on conclusory statements as opposed to facts or legal reasoning to support his claim that all of plaintiffs' questions would reveal information protected by the attorney work-product privilege. As stated by the Supreme Court, the work-product privilege protects, among other things, the mental processes of the attorney, which in this case means "mental impressions, personal beliefs," and the litigation strategies of the attorneys or their agents. *Hickman*, 329 U.S. at 511, 67 S.Ct. at 394. Instead of explaining to the court *how* answering the questions asked of Potts would reveal this type of protected matter, Intervenor Clinton simply claims that it "clearly" would. Intervenor Clinton's Partial Opposition to Plaintiffs' Motion to Compel at 10. For most of the questions, however, this would not be the case.

Intervenor Clinton "limits" his objections to the extent that any of these conversations, investigations, or receipts of documents have taken place in the course of Potts' investigations taken on behalf of Intervenor Clinton's

defense. Although neither side takes the time to discuss the fine distinctions presented by these issues, courts have held that certain information, such as whether investigators have talked to certain individuals in the course of their investigations, is not protected by the attorney work-product doctrine:

> In this case, the list of interviewees is just that, a list. It does not directly or indirectly reveal the mental processes of the . . . attorneys. It furnishes no information as to the content of any statement. There is no realistic possibility that its production will convert any member of the [attorney-client team] from advocate to witness. None of the policy reasons for protection of work product, other than the fact of its initial compilation . . ., applies.

*United States v. Amerada Hess Corp.*, 619 F.2d 980, 987–88 (3d Cir.1980); *In re Matter of Grand Jury*, 633 F.2d 282, 289 (3d Cir. 1980).

### (a) Questions 1, and 3–8.

■ The court believes that this reasoning is persuasive insofar as information such as a list of interviewees is concerned. Therefore, to the extent that Potts is being asked to reveal to whom he spoke or with whom he "had contact," as in questions 1 and 3–8, Potts must be compelled to answer these questions because this information—revealing only names and whether he has talked to these people—would not require the revelation of privileged material. *See id.* Once Potts has answered the plaintiffs' questions with lists of the contacts and interviewees, plaintiffs are entitled to ask reasonable follow-up questions. This court notes that information beyond the names of interviewees maybe protected by the attorney work-product privilege if the revelation of the information will tend to reveal the thoughts, opinions, and strategies of Intervenor Clinton's attorneys and their investigators. *See In re Matter of Grand Jury*, 633 F.2d at 290 ("The

oral testimony sought . . . respecting the results of the interviews . . . presents a different problem" from the names of the interviewees); *see also Upjohn*, 449 U.S. at 389–401, 101 S.Ct. 677 (stating that notes and memoranda of attorney based on witness statements are protected by the attorney work-product privilege because they would tend to reveal the attorney's mental processes). At this time, however, Intervenor Clinton and Non-party Potts have simply not met their burden of showing that all of the information that the plaintiffs' might possibly seek is protected. If the plaintiffs do ask questions regarding the substance of specific interviews that is protected, Intervenor Clinton and Potts are then entitled to claim the privilege and come back to this court to make a proper showing of why the information sought is protected.

### (b) Question 2

■ As to question number 2, clearly, in terms of revealing a strategy, asking whether an attorney's investigator has contacted someone is considerably different from asking the investigator whether he is investigating that person. The latter, to which question 2 is directed, would certainly tend to reveal the strategy of Intervenor Clinton's attorneys, and plaintiffs are far from making the requisite showing of substantial need necessary to override the privilege.[4] *See id.* at 401–02, 101 S.Ct. 677 (holding that in order to overcome privilege for opinion work product—that which reveals an attorney's mental impressions—a far stronger showing is required than the "substantial need" and "without undue hardship" standard otherwise applicable to "ordinary" work product). Therefore, the information sought in question two, as posed by the plaintiffs, is protected by the attorney work-product privilege. However, as Intervenor Clinton points out in this brief, the question may be re-framed as follows: "Setting aside any work you or IGI

---

4. Some courts have held that opinion work product is absolutely privileged. *See, e.g., In re Grand Jury Proceedings*, 473 F.2d 840, 848 (8th Cir. 1973). The Supreme Court, applying a heightened standard to opinion work product, declined to reach the issue of whether such an absolute rule was appropriate, and therefore left open the precise standard to be applied. *See Upjohn*, 449 U.S. at 401, 101 S.Ct. 677. This Circuit has also not yet specifically addressed whether there is an absolute privilege, but has followed *Upjohn* and required a "far stronger showing" before opinion work product, such as an attorney's notes and memoranda related to an interview, is ordered to be turned over. *See In re Sealed Case*, 856 F.2d 268, 273 (D.C.Cir.1988).

may or may not have performed at the direction of Williams & Connolly or Skadden, Arps, have you or IGI been involved in investigating Linda Tripp?" This question would avoid infringing upon Clinton's privileges, and, therefore, Clinton states that he would have no objection to it. *See* Intervenor Clinton's Partial Opposition to Plaintiffs' Motion to Compel at 7, n. 4. Therefore, plaintiffs will be permitted to re-pose question 2 in this form.

### (c) Questions 9, 10 and 11.

■ Questions 9, 10 and 11, ask whether Potts or anyone at IGI has received various documents or information. Once again, rather than explaining to the court *how* answering these questions would reveal protected matter, Intervenor Clinton simply assumes that it would. It is quite possible that the information inquired about was received by Potts or someone at IGI for some other reason other than "because of the prospect of litigation." *Senate of Puerto Rico*, 823 F.2d at 587, n. 42. As to question 11, plaintiffs simply inquire whether or not Potts received information from Tripp's Pentagon file. They do not ask from whom this information was received. If such information was received from someone completely unrelated to Intervenor Clinton, then the answer to this question would not be protected by his attorney work-product privilege. Thus, Intervenor Clinton has again failed to meet his burden of showing the information sought by the plaintiffs' questions are protected by privilege.[5]

## V. *Conclusion*

For the reasons stated above, the court will compel Potts to answer questions 1, 3–8, 9, 10, and 11 to the limited extent provided for in this opinion. Potts will also be compelled to answer question 2 to the extent that it is re-framed in the manner directed in this opinion. Plaintiffs will be permitted to continue their deposition to obtain the answers to these questions and to ask reasonable follow-up questions as they deem necessary.

The court HEREBY ORDERS that Plaintiffs' Motion to Compel Further Testimony of Larry Potts and for Further Relief as the Court Deems Just and Proper is GRANTED in part and DENIED in part. In this regard, it is FURTHER ORDERED that:

1. Plaintiffs' motion to compel is granted in that Non-party Potts must answer questions 1 and 3–11 and question 2 to the extent it is reframed as directed by this opinion.

2. Plaintiffs shall be allowed to continue their deposition of Non-party Potts.

SO ORDERED.

---

5. This court also notes, however, that to the extent that information from Tripp's Pentagon file might have been received from a government official before its public release, such information, although it may be work product, may still not be protected because of the crime-fraud exception. Communications otherwise protected by privilege are not protected if they "are made in furtherance of a crime, fraud, or other misconduct." *In re Sealed Case*, 754 F.2d 395, 399 (D.C.Cir.1985). "[T]he party seeking to overcome the privilege [has] the burden of showing that the crime-fraud exception applie[s]." *In re Sealed Case*, 107 F.3d 46, 49 (D.C.Cir.1997). This burden of proof is satisfied if "the party offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud" and shows that the lawyer was consulted for the purpose of committing that crime. *Id.* at 50–51.