**DIRECTOR OF the OFFICE OF THRIFT SUPERVISION,**
Petitioner,

v.

**VINSON & ELKINS, L.L.P.,**
et al., Respondents.

Misc. No. 96–0196 (TPJ).

United States District Court,
District of Columbia.

Sept. 24, 1996.

Bryan Taylor Veis, Office of Thrift Supervision, Washington, DC, for Director, Office of Thrift Supervision.

Charles Daniel Tetrault, Vinson & Elkins, L.L.P., Washington, DC, for Vinson & Elkins, LLP, C. Michael Buxton, Timothy A. Nelson.

Mary G. Clark, Williams & Connolly, Edward Bennett Williams, Washington, DC, for Barry A. Munitz.

*MEMORANDUM AND ORDER*

JACKSON, District Judge.

Petitioner Office of Thrift Supervision ("OTS") brings this action pursuant to 12 U.S.C. § 1818(n) to enforce its administrative subpoenas *duces tecum* addressed to a respondent law firm, Vinson & Elkins, and two of its attorneys. OTS seeks documents and possibly testimony pertaining to an informal interview of a former client of the law firm, Barry Munitz, conducted by three Federal Deposit Insurance Corporation ("FDIC") attorneys in September, 1992, at which the Vinson & Elkins attorneys were present.

Specifically, OTS wants to inspect the Vinson & Elkins attorneys' notes respecting Munitz' statements, and possibly to probe their recollections on deposition, in connection with OTS' investigation of the failure in December, 1988, of United Savings Association of Texas ("USAT"), a defunct savings and loan association of which FDIC was then the receiver. Munitz had been an officer and director of USAT. Based on one of the FDIC attorney's notes, OTS suspects that Munitz' testimony at the formal deposition he gave the OTS in June, 1995, is inconsistent with what he told the FDIC in September, 1992. OTS hopes to confirm that suspicion by obtaining a corroborative account of what

446

Munitz said at the earlier, unrecorded and untranscribed FDIC interview, and expects to find it in the notes and memories of Munitz' own lawyers. Munitz, currently represented by another law firm, has intervened as a co-respondent to join Vinson & Elkins and its attorneys in opposing further enforcement of the subpoenas.[1]

Respondents do not challenge the legitimacy of the investigation or the relevance of the information sought to its purpose. They resist production of the attorneys' notes of the interview of Munitz (and their possible testimony) on the ground of the privilege accorded "attorney work product."

The "work product" doctrine, and the privilege that attaches thereto, is a concept which originated in the case of *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), in the early days of pretrial discovery, and is now codified in the Federal Rules of Civil Procedure. It protects generally against forced disclosure of information generated by an attorney on behalf of a client in anticipation of litigation affecting his client. Work product is thus discoverable

> only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed.R.Civ.P. 26(b)(3).

The rationale is succinctly summarized by Justice Jackson's aphorism, concurring in *Hickman:* "Discovery was hardly intended to enable a learned profession to perform its function either without wits or on wits borrowed from the adversary." 329 U.S. at 516, 67 S.Ct. at 396. At least as pernicious as the appropriation by one lawyer of his opponent's intellectual efforts is the corrosive effect work product discovery has upon the role of the lawyer as advocate. The privilege for work product reflects the notion that lawyers generally should not be looked to as sources of evidence to be used against their clients unless they were participants in the transactions underlying the lawsuit.

Courts have come to recognize that attorney work product encompasses a spectrum rather than a single genus, its character as such depending primarily upon the amount of lawyerly thinking involved in its compilation. But in the matter of deciding how much protection from discovery should be extended to work product they have generally divided it into two discrete classes: "ordinary" work product, or essentially unrefined factual information, and "opinion" work product, revealing the lawyer's mental impressions, legal theories, and conclusions. The former is, as a rule, more accessible to an inquiring adversary than the latter.[2]

OTS takes the position that the Vinson and Elkins attorneys' notes of what was said by Munitz in September of 1992 and their residual recollections thereof are, at best, ordinary work product. He was, at the time, under no particular suspicion, and assigning culpability was not of primary concern to the FDIC. His interview produced what was a largely factual account of USAT's business activities prior to its failure, uninhibited by considerations of self-protection. The Vinson & Elkins attorneys who accompanied him asked no questions. They merely listened, and took notes.[3]

■ In the D.C. Circuit, interview notes may not be discovered absent "extraordinary justification," if at all. *In re Sealed Case,* 676 F.2d 793, 809–10 (D.C.Cir.1982); *see also* Fed.R.Civ.P. 26(b)(3). Interview notes, as distinguished from verbatim transcripts or

---

1. Respondents have already produced other documents called for by the subpoenas without objection.

2. Some courts have held that opinion work product is absolutely privileged. *See, e.g., In re Grand Jury Proceedings,* 473 F.2d 840, 848 (8th Cir. 1973). The Supreme Court expressly left open the precise standard to be applied but noted that a party must make a "far stronger showing of necessity" than otherwise would be required.

*Upjohn v. United States,* 449 U.S. 383, 401–02, 101 S.Ct. 677, 688–89, 66 L.Ed.2d 584 (1981).

3. A supervising OTS attorney who examined the notes *in camera* during an intra-agency appeal prior to this action ordered them produced but allowed the redaction of some information he was willing to characterize as "opinion" work product. OTS accedes to that determination; respondents do not. They contend that their notes are privileged in their entirety.

first-person statements, are properly treated as opinion work product because, in choosing what to write down and what to omit, a lawyer necessarily reveals his mental processes. He is not, as OTS asserts, a "mere scrivener." Both the Supreme Court and D.C. Circuit have recognized the danger of ordering production of an attorney's notes of a witness' oral statements. In *Upjohn,* the Supreme Court noted that "[f]orcing an attorney to disclose [such] notes . . . is particularly disfavored because it tends to reveal the attorney's mental processes." 449 U.S. at 399, 101 S.Ct. at 687. Drawing on this statement, this Circuit has held that the "far stronger showing" referred to in *Upjohn* must be met before an attorney's notes and memoranda related to an interview are turned over. *See In re Sealed Case,* 856 F.2d 268, 273 (D.C.Cir.1988) ("As the work product sought here is based on oral statements from witnesses, a far stronger showing is required than the 'substantial need' and 'without undue hardship' standard"); *United States v. Paxson,* 861 F.2d 730, 735–36 (D.C.Cir.1988) (imposing heightened standard for interview notes); *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1187 (D.C.Cir.1987) (reading *Hickman* as supporting the proposition that "attorney *notes* taken during witness interviews are, for all practical purposes, *always* privileged") (emphasis in original); *Bristol–Meyers Co. v. FTC,* 598 F.2d 18, 29 (D.C.Cir.1978) (stating that interview notes can be expected to reveal counsel's mental impressions).

OTS proffers contrary case authority from the Second Circuit and the Southern District of New York to the effect that an attorney's notes of witness interviews partake more of the "ordinary" than of the "opinion" sort of work product.[4] In the circumstances presented by those cases the New York courts ordered the disclosure of interview notes taken by an attorney to an adversary upon a sufficient showing of need and difficulty in procuring a substantial equivalent. Each case is, however, factually distinguishable from the instant case. Two of them expressly acknowledge that they are rejecting D.C. Circuit precedent to the extent that they find it to be inconsistent.[5] And *none* of the cases purported to require an attorney for a target of a government enforcement proceeding having punitive consequences to divulge his own notes of his client's oral statements to the enforcing authorities.

■ Regardless of what class of work product is at issue in this case, however, OTS' case for enforcement of its subpoenas founders on both elements of the "substantial need and no undue hardship" test. Putting aside the fact that any discrepancies between statements uttered in an informal interview and a witness' understandably more circumspect testimony under oath years later may be both inevitable and entirely innocent, if OTS truly attaches a sinister motive to them, and if they exist, it has ample alternative proof of them. Not one, but three FDIC attorneys conducted the interview. Two are reported to have taken notes themselves; indeed, it is from those notes that OTS' suspicions arise.

If OTS' purpose in exploring possible variances in Munitz' several accounts of his relationship with and experiences at USAT is hostile, as it appears, i.e., to impeach or to charge him criminally, then the testimony of the FDIC attorneys should suffice.[6] But even if its purpose were benign, i.e., to in-

---

4. *See In re John Doe Corp.,* 675 F.2d 482, 493 (2d Cir.1982) (*in camera* review of notes led court to conclude that the only inferences that could be drawn would disclose concerns any layman would have); *Redvanly v. NYNEX Corp.,* 152 F.R.D. 460, 466 (S.D.N.Y.1993) (ordering production of notes comprising a running report of a meeting); *United States v. Marcus Schloss & Co., Inc.,* 1989 WL 62729, *3–*4 (S.D.N.Y. June 5, 1989) (typical "quasi-shorthand" notes did not reveal personal thoughts and were discoverable in light of need for flexibility in criminal case); *United States v. Weissman,* 1995 WL 244522, *9 (S.D.N.Y. Apr. 26, 1995) (same).

5. *See Marcus Schloss* at *3; *Weissman* at *9.

6. In the context of OTS' investigation and this proceeding, Munitz is clearly an adversary. As OTS views him today, Munitz was not simply a disinterested spectator at the demise of USAT. He was an official of USAT who may have colluded in its purchase of the junk bonds that undermined the financial integrity of the institution, and from whom, among others, OTS is currently in quest of a substantial sum in restitution and penalties.

448

form or clarify, then Munitz remains available for, and has declared himself willing to submit to, a supplemental deposition. Thus, OTS has neither a particular need for, nor should it encounter any hardship in obtaining, the evidence it wants, whatever its purpose.

Having failed to make a "far stronger showing of necessity and unavailability," *Upjohn,* 449 U.S. at 402, 101 S.Ct. at 689, than it has made here, OTS' motion to compel respondents to produce the Vinson & Elkins attorneys' notes of the September, 1992, interview will be denied. Likewise, and for similar reasons the Court will deny OTS' demand that the attorneys be required to submit to additional questioning, with or without their recollections refreshed. What lawyers remember is just as privileged as what they write down. *See Hickman,* 329 U.S. at 511, 67 S.Ct. at 393 (work product is reflected in "mental impressions, personal beliefs, and countless other tangible and intangible ways").

For the foregoing reasons, therefore, the Court concludes that further enforcement of OTS' administrative subpoenas would constitute an abuse of process, and it is, this 24th day of September, 1996,

ORDERED, that petitioner's motion to compel Vinson & Elkins to produce the documents designated as documents 1, 6, and 7 is denied; and it is

FURTHER ORDERED, that petitioner's motion to require Mr. Buxton and Mr. Nelson of Vinson & Elkins to appear and testify regarding their recollections of the September, 1992, interview of Munitz is denied; and it is

FURTHER ORDERED, that the Order to Show Cause of June 20, 1996, is discharged, and this proceeding is dismissed with prejudice.