**AMERICAN FEDERAL BANK, FSB, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 95–498–C.**

United States Court of Federal Claims.

April 28, 2004.

Howard N. Cayne, Arnold & Porter, Washington, D.C., for plaintiff. Of counsel were David B. Bergman, Michael A. Johnson, Michael A. Sackey, and Kwame Clement.

Jonathan S. Lawlor, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for defendant. With him on the brief were Deputy Assistant Attorney General Stuart E. Schiffer, David M. Cohen, Director, and Jeanne E. Davidson, Deputy Director, Commercial Litigation Branch. Of counsel were Maureen A. Delaney, Gregory R. Firehock, Joanne E. Johnson, and John N. Kane, Trial Attorneys, Commercial Litigation Branch, Washington, D.C.

## ORDER

LETTOW, Judge.

This *Winstar*-related case [1] is nearing trial on issues regarding liability. As part of the preparations for trial, counsel are conducting interviews of persons listed as witnesses. In that connection, counsel for plaintiff ("American Federal") is proposing to conduct voluntary interviews of persons who were previously employed by the government as regulators. To shield those interviews from the government's trial counsel, American Federal has filed a Motion to Conduct Voluntary, Confidential Interviews Of Trial Witnesses Who Are Former Regulators Outside The Presence Of Counsel For The Defendant. That motion raises issues of the scope of, and limitations on, the work product doctrine, and of the effect of regulations promulgated by the pertinent regulatory agencies concerning interviews with former employees. By this order, the Court grants American Federal's motion for the proposed interviews to go forward on a protected basis and provides a corresponding protection for any voluntary interviews that may be conducted by counsel for the government of former employees of American Federal and its predecessors.

## BACKGROUND

Over a thirty-seven day period in the Spring of 1982, American Federal obtained approvals from the Federal Home Loan Bank Board ("FHLBB" or "Bank Board") to acquire four smaller thrifts that were in financial difficulty. *See American Fed. Bank, FSB v. United States*, 58 Fed.Cl. 429, 431 (2003). Each approval by the Bank Board of these acquisitions provided, among other things, for the creation of "supervisory goodwill" in the amount of the mark-to-market deficit of the assets and liabilities acquired,

1. *See United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed.2d 964 (1996).

the inclusion of that goodwill in American Federal's regulatory capital, and the amortization of the goodwill on a straight-line basis over a forty-year period. *Id.* at 431–33. On November 7, 2003, this Court denied the parties' cross-motions for partial summary judgment on liability and remitted for trial disputed issues of fact concerning formation of a contract or an implied-in-fact contract. *Id.* at 430. Trial on those liability issues is scheduled to commence on May 10, 2004.

American Federal filed the instant motion specifically to permit its counsel to conduct voluntary, confidential, pre-trial preparatory interviews with H. Brent Beesley and Thurman C. Connell, third-party witnesses it has identified on its trial witness list. Pl.'s Mot. at 1.[2] American Federal represents that both witnesses are former employees of the Bank Board. *Id.* The government represents that Mr. Beesley is a former director of the Federal Savings and Loan Insurance Corporation ("FSLIC") and that Mr. Connell is also a former director of FSLIC as well as a former employee of the Bank Board. Def.'s Resp. at 1.[3] Neither witness is represented by personal counsel. *Id.* at 8.

American Federal avers that both witnesses have indicated their willingness to meet with its counsel to discuss their knowledge of matters pertinent to this litigation. Pl.'s Mot. at 1.[4] The circumstances attendant to the projected interviews were concisely set out by the government in its brief as follows:

> Messrs. Beesley and Connell were previously deposed, respectively, in common discovery and case-specific discovery.... Am[erican Federal] further represents that Mr. Beesley and Mr. Connell are willing to make themselves available to Am[erican Federal] and its attorneys, on a voluntary basis, to discuss their knowledge of

the matters at issue in this case. Pl.'s M[ot.] at 1. Am[erican Federal] also acknowledges in its motion that the relevant agencies must have the opportunity to monitor the interviews to protect against the disclosure of confidential and privileged information. *See id.* at 2. The OTS and FDIC have advised us that, given Am[erican Federal]'s representations and acknowledgments, the agencies do not object to the requested interviews subject to OTS and FDIC representatives having the right to monitor the interviews in person, by telephone or by other appropriate means, at the agencies' discretion.

Def.'s Resp. at 4. Thus, for purposes of this motion, the Court assumes both that the interviews would be fully voluntary from the standpoint of the persons to be interviewed and that the regulatory agencies do not themselves have objections to the interviews.

American Federal acknowledges that under regulations issued by the pertinent successor agencies, OTS and FDIC, those agencies have discretionary authority over the conduct of any interviews of former agency employees. Pl.'s Mot. at 1–2; Pl.'s Reply at 2. Specifically, 12 C.F.R. 510.5 vests in OTS the authority to determine the scope of any discussions, including informal interviews, that a former OTS or FHLBB employee may have with a member of the public regarding information acquired from such employee's duties or status. The regulation also protects the right of OTS to assert evidentiary privileges regarding such information. That regulation states, in pertinent part:

> (a) *Scope.* (1) This section applies to requests by the public for unpublished OTS information, such as requests for records or testimony from parties to lawsuits in which the OTS is not a party.

2. The government has listed Mr. Beesley, but not Mr. Connell, on its own trial witness list. Def.'s Resp. at 4 n. 3.

3. The Bank Board chartered and regulated federal thrifts, and FSLIC insured the deposits held by those thrifts. *Winstar,* 518 U.S. at 844, 116 S.Ct. 2432. In 1989 Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), Pub.L. 101–73, 103 Stat. 183 (codified in scattered sections of Title 12 of the U.S. code, including 12 U.S.C. § 1464), which

abolished FHLBB and FSLIC, transferring the former's regulatory functions to the Office of Thrift Supervision ("OTS") and the latter's insurance functions to the Federal Deposit Insurance Corporation ("FDIC"). *Winstar,* 518 U.S. at 856, 116 S.Ct. 2432.

4. American Federal further represents that Mr. Beesley has specified he will meet with counsel for plaintiff and counsel for defendant for one hour each. Pl.'s Reply at 4 n. 2.

(2) Unpublished OTS information includes ... information that current and former employees, officers, and agents obtained in their official capacities. Examples of unpublished information include:

(i) Information in the memory of a current or former employee, officer, or agent of the OTS (or the Federal Home Loan Bank Board, the predecessor agency of the OTS), by testimony or informal interview, that was acquired in the course of performing official duties or because of the employee's, officer's or agent's official status;

...

(b) *Purpose. The purposes of this section are:*

(1) *To afford an orderly mechanism* for the OTS to expeditiously process requests for unpublished OTS information and, where appropriate, *for the OTS to assert evidentiary privileges* in litigation ....

...

(c)(3)(iv) *The OTS shall specify the scope of any authorized testimony and may take steps to ensure that the scope of testimony taken adheres to the scope authorized.*

12 C.F.R. § 510.5 (emphasis added). To a similar effect, the pertinent FDIC regulation, 12 C.F.R. Part 309, provides that the FDIC possesses discretion over allowing testimony by its former employees. The relevant provision provides:

The General Counsel, or designee, may in his or her discretion and for good cause, disclose or authorize disclosure of any exempt record or testimony by a current or former officer, director, employee, agent of the Corporation, or third party, sought in connection with any civil or criminal hearing, proceeding or investigation without the service of a judicial subpoena, or other legal process requiring such disclosure or testimony, if he or she determines that the records or testimony are relevant to the hearing, proceeding or investigation and that disclosure is in the best interests of

justice and not otherwise prohibited by Federal statute.... Where the General Counsel or designee authorizes a current or former officer, director, employee or agent of the Corporation to testify or disclose exempt records pursuant to this paragraph (b)(8), he or she may, in his or her discretion, limit the authorization to so much of the record or testimony as is relevant to the issues at such hearing, proceeding or investigation, and he or she shall give authorization only upon fulfillment of such conditions as he or she deems necessary and practicable to protect the confidential nature of such records or testimony.

12 C.F.R. § 309.6(b)(8)(ii).[5]

The government has advised that "in the specific circumstances of this case, we do not oppose Am[erican Federal]'s motion" except to the extent it seeks a confidentiality order protecting its discussions with the identified individuals from disclosure. Def.'s Resp. at 4–5. The dispute thus centers on two issues: (1) whether the work product doctrine supports issuance of a protective order ensuring the confidentiality of the proposed interviews, and (2) whether any such order should apply to the witnesses as well as the agency monitors.

## DISCUSSION

American Federal contends that the work product doctrine protects its counsel's interviews with the witnesses from disclosure to the government's trial counsel. Pl.'s Reply at 5–8. American Federal indicates that this protection should bar the presence of the government's trial counsel at the interviews, and, additionally, that the government's counsel should be prohibited from making inquiries to either the agency monitors or the witnesses themselves about the substance of the interviews and that neither the monitors nor the witnesses should disclose those communications to defendant's trial counsel. The government responds that "there is, in

---

**5.** Unlike the corresponding OTS regulation, this regulation does not explicitly apply to former employees of the predecessor agency. *See* 12 C.F.R. § 309.2(b) ("The terms *Corporation* or *FDIC* mean the Federal Deposit Insurance Corporation."). For the purposes of the instant motion, the Court assumes, but does not decide, that the regulation quoted applies to former FSLIC employees. Neither party has argued that it does not so apply.

fact *no* privilege that protects from disclosure the substance of Am[erican Federal]'s interviews with former regulators." Def.'s Resp. at 5. The government claims that it opposes plaintiff's request for a confidentiality order not to discover American Federal's trial strategies and legal theories, but to ensure that American Federal's counsel accurately represents the facts and evidence during its interviews with the witnesses. *Id.* at 8. The government also argues that the precedents upon which American Federal relies neither specified their legal grounds for barring disclosure of the communications to the government's trial counsel nor specifically prohibited the witnesses themselves from disclosing the communications, "thereby permitting such disclosure by the witnesses themselves." *Id.* at 6.

### A. The Work Product Doctrine

 Arguing that it "should be able to probe fully the statements, representations, and understandings conveyed by Am[erican Federal] to these witnesses," *id.* at 8, the government seeks access to intangible, oral communications rather than to documents and other tangible materials. The Supreme Court's landmark decision in *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), provides the framework for analyzing claims for protection of an attorney's intangible work product. By contrast, Rule 26(b)(3) of the Rules of the Court of Federal Claims ("RCFC") establishes the basis for the application of the work product doctrine to "documents and tangible things."[6] *See Alexander v. FBI,* 192 F.R.D. 12, 17 (D.D.C. 2000) (Lamberth, J.) (interpreting the identical terms of Fed.R.Civ.P. 26(b)(3) and citing *United States v. One Tract of Real Property,* 95 F.3d 422, 428 n. 10 (6th Cir.1996); *Maynard v. Whirlpool Corp.,* 160 F.R.D. 85, 87 & n. 3 (S.D.W.V.1995)). *See also* 8 Charles

Alan Wright, Richard L. Marcus & Arthut R. Miller, *Federal Practice and Procedure* § 2024 at 337–38 (2d ed.1994) (hereafter "Wright, *Federal Practice and Procedure* "); 6 James Wm. Moore, *et al., Moore's Federal Practice* § 26.70[2][c] (3d ed.2004). Thus, as the work product doctrine has evolved through rule and precedent, the holding in *Hickman* rather than the terms of Rule 26(b)(3) governs the applicability *vel non* of the work product doctrine in this case where intangible work product is at issue.

*Hickman* involved the sinking of a tug in which several crew members drowned. *Hickman,* 329 U.S. at 498, 67 S.Ct. 385. The defendant tug owners' attorney, one Mr. Fortenbaugh, interviewed the survivors and "also interviewed other persons believed to have some information relating to the accident and in some cases he made memoranda of what they told him." *Id.* The district court had ordered the tug owners and Mr. Fortenbaugh to respond to plaintiff's interrogatories by, among other things, "stat[ing] in substance any fact concerning this case which Defendants learned through oral statements made by witnesses to Mr. Fortenbaugh whether or not included in his private memoranda." *Id.* at 500, 67 S.Ct. 385. The issue thus involved "the extent to which a party may inquire into oral and written statements of witnesses, or other information, secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen." *Id.* at 497, 67 S.Ct. 385. The Supreme Court relied on "the general policy against invading the privacy of an attorney's course of preparation," *id.* at 512, 67 S.Ct. 385, in rejecting the plaintiff's "attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh." *Id.* at 509, 67 S.Ct. 385. Fi-

---

6. RCFC 26(b)(3) provides, in pertinent part:

Subject to the provisions of subdivision (b)(4), a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the

materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

nally, the Court suggested that tangible materials may be discoverable upon a proper showing of necessity, *id.* at 511–12, 67 S.Ct. 385, "[b]ut as to oral statements made by witnesses to Fortenbaugh, whether presently in the form of his mental impressions or memoranda, we do not believe that any showing of necessity can be made under the circumstances of this case so as to justify production." *Id.* at 512, 67 S.Ct. 385.

"The test for whether a claim of work-product privilege is viable is 'whether, in light of the nature of the [intangible work product] and the factual situation in the particular case, the [information] can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *Alexander*, 192 F.R.D. at 17 (quoting *Senate of Puerto Rico v. United States Dep't of Justice*, 823 F.2d 574, 587 n. 42 (D.C.Cir.1987)). There is no dispute that American Federal's counsel seeks to conduct trial-preparation sessions with former thrift agency directors to prepare for the pending litigation in which the latter will testify as part of American Federal's case in chief. Additionally, there could be no serious disagreement that the purpose of the projected sessions is to enable American Federal's counsel to develop its trial presentations, the disclosure of which would "invad[e] the privacy of an attorney's course of preparation," *Hickman*, 329 U.S. at 512, 67 S.Ct. 385, by revealing his or her "mental impressions, personal beliefs," and litigation strategies. *Id.* at 511, 67 S.Ct. 385. *See also Alexander*, 192 F.R.D. at 19 ("information beyond the names of interviewees may be protected by the attorney work-product privilege [*sic*] if the

revelation of the information will tend to reveal the thoughts, opinions, and strategies of [intervenor's] attorneys and their investigators"); *Peralta v. Cendant Corp.*, 190 F.R.D. 38, 42 (D.Conn.1999) (denying plaintiff's motion to compel deposition testimony insofar as plaintiff's inquiry into communications between defendant's counsel and third-party witness involved counsel's "conclusions, opinions, or legal theories"); *Bercow v. Kidder, Peabody & Co.*, 39 F.R.D. 357, 358 (S.D.N.Y.1965) ("the questions here in issue represent an indirect attempt to ascertain the manner in·which an adversary is preparing for trial"); 8 Wright, *Federal Practice and Procedure* § 2024 at 358 (noting that "the great bulk of authority [is] that statements of witnesses taken by an attorney were work product" and collecting cases).

Finally, the government has not attempted to make a showing of necessity, hardship, or injustice that might justify "invading the privacy of an attorney's course of preparation." *Hickman*, 329 U.S. at 512, 67 S.Ct. 385.[7] Indeed, such a showing would lack any basis in fact, because the government's counsel have already deposed Messrs. Beesley and Connell and "already have unfettered access to former agency employees to conduct such interviews without opposing counsel present." Pl.'s Mot., Ex. A at 3 (Senior Judge Smith's Order in *American Savings Bank, F.A. v. United States*, No. 92–872C (Fed.Cl. Aug. 14, 2002)).[8]

In short, any interviews that American Federal's counsel may conduct of former government officials on a voluntary basis are protected by the work product doctrine. The

---

7. Such a showing might in some circumstances justify production of "written statements and documents," *Hickman*, 329 U.S. at 511, 67 S.Ct. 385, but the Supreme Court did not resolve the issue of whether the same is true of "oral statements made by witnesses to" an attorney. *Id.* at 512, 67 S.Ct. 385. With respect to the latter, the Court opined only, "[i]f there should be a rare situation justifying production of these matters, petitioner's case is not of that type." *Id.* at 513, 67 S.Ct. 385. The oral statements made by the witnesses to the attorney in *Hickman* are examples of what has come to be known as "opinion work product." 8 Wright, *Federal Practice and Procedure* § 2026 at 398–99. Subsequent to *Hickman*, the Supreme Court has declined to decide whether opinion work product should re-

ceive absolute protection, but it has stated that if such materials were to be produced, "a far stronger showing of necessity and unavailability by other means" would be required than is necessary to justify production of other work product. *Upjohn Co. v. United States*, 449 U.S. 383, 402, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

8. Somewhat similar orders permitting plaintiff's counsel in *Winstar*-related cases to conduct voluntary interviews of former thrift agency employees were entered by Judge C. Miller in *Fifth Third Bank of Western Ohio v. United States*, No. 95–503C (Orders of Oct. 24, 2002, and Sept. 30, 2002); and *Southern National Corp. v. United States*, No. 95–526C (Order of Aug. 7, 2003).

government's trial counsel shall be excluded from such voluntary interviews and may not seek disclosure of any notes or writings that American Federal's counsel may make about the interviews. Ordinarily, an attorney or party seeking the protection of the work product doctrine must meet its initial burden to show that the doctrine applies to protect each particular communication the disclosure of which is sought by the adverse party. *See, e.g., Alexander,* 192 F.R.D. at 19; *Peralta,* 190 F.R.D. at 42. American Federal has made the requisite showing regarding the two projected witness interviews.

## B. Extension of Protection to Agency Monitors and the Witnesses

■ In the specific circumstances of this case, the question also arises whether a protective order should issue that applies to both the agency monitors and the witnesses. Because "the purpose of the work product doctrine 'is not to protect the evidence from disclosure to the outside world, but rather to protect it only from the knowledge of opposing counsel and his client,' it follows that 'disclosure of [work product information] to third persons does not waive the work-product immunity.'" *Peralta,* 190 F.R.D. at 42 (quoting Wright, *Federal Practice and Procedure* § 2024 at 368–69) (alteration in *Peralta*). However, a disclosure to a third party that substantially increases the likelihood that protected content would be revealed to an adverse party might waive the work product protection. *See, e.g., Magee v. Paul Revere Life Ins. Co.,* 172 F.R.D. 627, 641 (E.D.N.Y.1997); *In re Imperial Corp. of Am.,* 167 F.R.D. 447, 454 (S.D.Cal.1995); 8 Wright, *Federal Practice and Procedure* § 2024 at 369 (collecting cases). There would be no waiver where the transferor and transferee were co-parties or where they shared interests in a matter litigated against a common adversary. *See Information Res., Inc. v. Dun & Bradstreet Corp.,* 999 F.Supp. 591, 591–92 (S.D.N.Y.1998). It is readily apparent that American Federal does not share common interests with thrift agencies or their former employees in this litigation against the United States. And, as noted *supra,* the government's trial counsel currently has unfettered access to employees of the thrift agencies. Thus, absent a protec-tive order prohibiting the agency monitors and the witnesses from disclosing the substance of the interviews to the government's trial counsel, American Federal and its counsel might forfeit the protection of the work product doctrine.

■ The government interprets the orders entered in *American Savings* and other cases, *see supra,* at 498 & n. 8, as distinguishing between disclosure by the agency monitors and the witnesses themselves, prohibiting disclosure by the former while allowing disclosure by the latter. Def.'s Resp. at 6. The government argues that the Court did not explain the basis for the confidentiality orders that were entered and that the Court in those cases "implicitly recognized" the lack of any legal basis when it declined to apply to the witnesses the prohibition on disclosure. *Id.* The government is correct that the Court's orders did not explicitly apply to the witnesses, but it is incorrect that the orders lack a basis and that their reasoning does not apply to the witnesses. Senior Judge Smith grounded his order in *American Savings* on the work product doctrine, observing that "[t]he purpose of [a protective order] would be to enable plaintiffs to conduct interviews with these former employees without having to reveal their trial preparations to the opposing side. As plaintiffs state: 'No attorney can effectively develop a case in the presence of trial attorneys from the other side.'" Pl.'s Mot., Ex. A at 2. *Accord id.,* Ex. A at 3 ("Plaintiffs' proposal confronts the problem of protecting privileged thrift agency data-a primary goal of 12 C.F.R. § 510.5–while at the same time enabling plaintiffs to conduct these voluntary interviews outside the presence of their litigation adversaries."). This reasoning applies to both the agency monitors and the former thrift agency employees; there is a substantial risk that the government's attorneys would attempt to acquire from both sets of individuals the disclosures made to them by American Federal's counsel.

As an embellishment to its position, the government argues that disclosure by the witnesses to its trial counsel is necessary to "help ensure that Am[erican Federal]'s rep-

resentations and statements to the witnesses are accurate, and do not mislead these witnesses about the facts of this case as set forth in the contemporaneous documents." Def.'s Resp. at 8. This argument is unavailing given the circumstances of this case. As the government suggests, in general the work product doctrine should not cover *all* comments made by counsel during an interview, because counsel may try to use a protected interview to induce a bias in the witness. *See Peralta,* 190 F.R.D. at 42.[9] This possibility is of minimal concern in this case, however, because the thrift agency's regulations require that a representative from the relevant agency be present, among other things, to "specify the scope of any authorized testimony" and "to assert evidentiary privileges in litigation." 12 C.F.R. §§ 510.5(b)(1), (c)(3)(iv), (quoted more fully *supra,* at 496); *see also* 12 C.F.R. § 309.6(b)(8)(ii) (the General Counsel of FDIC exercises "discretion[ to] limit the authorization" of testimony by former employees and "shall give authorization only upon fulfillment of such conditions as he or she deems necessary and practicable") (quoted more fully *supra,* at 496). The agency monitors can exercise their broad discretion in such a manner as to prevent or correct any misrepresentation made or bias planted by American Federal's counsel during the trial-preparation interviews.

Thus, in this case the protective order issued under the work product doctrine shall apply to bar the agency monitors and the witnesses being interviewed from disclosing to the government's trial counsel any aspect of the interviews conducted by American Federal's counsel.

### C. Counterpart Protection for Government Counsel's Interviews

The government is mistaken in asserting that it would be disadvantaged by an order protecting the confidentiality of American Federal's counsel's communications with Mr. Beesley or Mr. Connell because any corresponding communications the government may have with those witnesses "would not be

protected from disclosure to Am[erican Federal]." Def.'s Mot. at 8. As previously explained, thrift agency regulations effectively bestow protection on the government's discussions with former thrift agency employees by prohibiting such employees from having any agency-related discussions with any member of the public, absent the agency's permission. *See supra,* at 495–96. Moreover, the substance of any trial-preparation sessions the government might have with those witnesses, or with any other third-party witnesses, would be protected by the work product doctrine, as discussed *supra,* at 496–99. Finally, to effectuate the purposes of the work product protection, the Court extends the benefit of its protective order to any voluntary interviews conducted by the government's trial counsel of former employees of American Federal and its predecessors.

### CONCLUSION

For the reasons stated, the Court grants the plaintiff's motion to conduct voluntary interviews with Messrs. Beesley and Connell outside the presence of the government's trial counsel. An OTS representative may monitor each interview insofar as the witness being interviewed is a former employee of the Bank Board, and an FDIC representative may also monitor each interview insofar as the witness is a former FSLIC employee. Any thrift agency monitor and Messrs. Beesley and Connell shall not reveal any content of the interviews to the government's trial counsel, nor shall the latter seek to acquire such content from the agency monitors or from the witnesses. Correspondingly, the government shall have the right to conduct voluntary interviews of former employees of American Federal and its predecessors under comparable conditions and protections.

IT IS SO ORDERED.

---

9. In *Peralta,* the court endeavored to draw a line between opposing counsel's "asking [a fact witness who was interviewed] explicitly about [interviewing counsel's] legal conclusions or legal opinions that reveal [interviewing counsel's] le-

gal strategy" and "inquir[ing] into non-privileged communications," 190 F.R.D. at 42, barring the former and allowing the latter. *Id.* Such a distinction may be too finely drawn to be readily applied in many cases.