**GULF GROUP GENERAL
ENTERPRISES CO.
W.L.L., Plaintiff,**

v.

**UNITED STATES, Defendant.**

Nos. 06–835C, 06–853C, 06–858C, 07–82C.

United States Court of Federal Claims.

Filed: Jan. 3, 2011.

Unsealed and Issued for Publication: Jan. 11, 2011.[1]

1. The parties were given the opportunity to propose redactions to the court. Neither party proposed any redactions. The Order, originally issued on January 3, 2011, therefore, is unsealed and issued for publication.

Iliaura Hands, Miller & Williamson LLC, New Orleans, LA, for the plaintiff. With her was Machale A. Miller, Miller & Williamson LLC, New Orleans, LA.

Robert C. Bigler, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for the defendant. With him were Deborah A. Bynum, Assistant Director, Jeanne E. Davidson, Director, Commercial Litigation Branch, and Tony West, Assistant Attorney General, Civil Division, Washington, D.C.

## ORDER

HORN, J.

Plaintiff Gulf Group General Enterprises Co. W.L.L. (Gulf Group), a Kuwaiti corporation, entered into four different contracts with the United States Army to provide various goods and services. Plaintiff filed four different amended complaints, for four separate contracts, which were assigned Case Nos. 06–835C, 06–853C, 06–858C and 07–82C. The four cases originally were assigned to different Judges of the Court of Federal Claims, but, in the interest of case management, and, given various investigations of the contracts, were consolidated and assigned to the undersigned Judge, with Case No. 06–835C designated as the lead case. Briefly, in Case No. 06–835C, plaintiff complains that the contract was improperly cancelled, and that plaintiff's initial claim was submitted to then Major John Cockerham, an Army contracting officer. In Case Nos. 06–853C and 06–858C, plaintiff complains that the contracts were improperly cancelled by the same Major Cockerham, and that plaintiff's initial claims in the two cases were submitted to him. In Case No. 07–82C, plaintiff further complains that the government improperly refused to reimburse plaintiff for demurrage, or delay, charges, and also submitted the claim for reimbursement to Major Cockerham.

Plaintiff conducted a pre-deposition interview of Mr. Cockerham on October 19 and 20, 2010. The interview took place at the Federal Correctional Institution at La Tuna, in Anthony, Texas where Mr. Cockerham is currently incarcerated. The interview was recorded verbatim by a court reporter. The defendant's attorney in the four cases was not present at the interview. Defendant now seeks production of the verbatim transcript of the Cockerham interview by plaintiff's counsel. In response, plaintiff asserts the attorney work product privilege.

Plaintiff's interview of Mr. Cockerham by plaintiff was preceded by an objection interposed by defendant's counsel, which asked the court to direct that neither party be permitted to contact Mr. Cockerham, prior to his scheduled deposition. The deposition of Mr. Cockerham commenced on November 3, 2010, continued November 4 and 5, 2010, and is scheduled to re-convene January 11, 2011. The rationale for the government's objection to plaintiff's interview was a note in the file in Mr. Cockerham's handwriting stating: "Tell Saud [Al Tawash] if ask [sic] to don't [sic] confess to anything. . . . We will do business later in trading." Defendant asserted that this statement implied that Mr. Cockerham and Mr. Al Tawash, the General Manager of plaintiff Gulf Group, had some sort of agreement of cooperation. After review, the

court did not prohibit an interview of Mr. Cockerham by either counsel prior to Mr. Cockerham's deposition in these cases, but did direct that only the parties' counsel would be permitted to be present in any interview of Mr. Cockerham, without principals for either side, a restriction which had been proposed as an alternative earlier by plaintiff's counsel.

In response to defendant's production request, plaintiff's counsel explains that the purposes of having a court reporter and transcribing the interview of Mr. Cockerham were, first, the interview of Mr. Cockerham took place in a federal prison, with "an abbreviated schedule of hours available to conduct the interview." Plaintiff's counsel states she believed that having a court reporter present would permit "more [to] be accomplished in the time available." Second, and of more importance, plaintiff's counsel states that in light of the government's objection to the plaintiff's counsel's interview of Mr. Cockerham, the transcript was made in an abundance of caution, so that there would be a record in the event the government subsequently suggested that the interview was conducted inappropriately.

As to defendant's request for production of the verbatim transcript of the predeposition interview of Mr. Cockerham by plaintiff's counsel, forwarded to the court after the first phase of Mr. Cockerham's deposition, relevancy is not in dispute given the central involvement of Mr. Cockerham in each of the four cases. See Rule of the United States Court of Federal Claims (RCFC) 26(b)(3)(A)(i) (2010). With respect to whether the pre-deposition interview is discoverable, RCFC 26(b)(3)(A) ("Documents and Tangible Things") states:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to RCFC 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under RCFC 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.

Furthermore, RCFC 26(b)(3)(B) ("Protection Against Disclosure"), states: "If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." The transcript of Mr. Cockerham's predeposition interview is such a tangible document.

Interpreting Fed. R. Civ. Pro. 26(b)(3), which contains virtually identical language to the Court of Federal Claims' RCFC 26(b)(3), the United States Court of Appeals for the Federal Circuit, in *In re Seagate Technology, LLC*, stated that:

> Unlike the attorney-client privilege, which provides absolute protection from disclosure, work product protection is qualified and may be overcome by need and undue hardship. However, the level of need and hardship required for discovery depends on whether the work product is factual, or the result of mental processes such as plans, strategies, tactics, and impressions, whether memorialized in writing or not. Whereas factual work product can be discovered solely upon a showing of substantial need and undue hardship, mental process work product is afforded even greater, nearly absolute, protection.

*In re Seagate Tech., LLC*, 497 F.3d 1360, 1375 (Fed.Cir.2007) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 400, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) (other citations omitted)), *cert. denied sub nom. Convolve, Inc. v. Seagate Tech., LLC*, 552 U.S. 1230, 128 S.Ct. 1445, 170 L.Ed.2d 275 (2008); *see also Banks v. United States*, 90 Fed.Cl. 707, 709 (2009) ("*Seagate* and other relevant case law identify two tiers of protection afforded work product. Fact work product is discoverable upon demonstration of need and hardship, while opinion work product is discoverable only in rare circumstances." (citing *In re Seagate Tech., LLC*, 497 F.3d at 1375 and *Pac. Gas & Elec. Co. v. United States (PG & E)*, 69 Fed.Cl. 784, 789–90 (2006))).

Plaintiff argues that, in accordance with RCFC 26(b)(3)(A), the transcript of the interview with Mr. Cockerham was prepared in anticipation of litigation or for trial. Defendant does not address the matter, presumably because the nexus to litigation is clear. Consequently, the court concludes that this threshold test is met and that the plaintiff's interview of Mr. Cockerham was conducted in anticipation of litigation, in advance of the witness' deposition, and prior to a trial, which is set to commence on May 16, 2011.

As RCFC 26(b)(3)(A) states, however, although documents may be prepared in anticipation of litigation or for trial, they still may be discoverable if relevant, and if the moving party can demonstrate a substantial need for the documents to prepare its case and the moving party cannot, without undue hardship, obtain the information by other means. Plaintiff argues that, by defendant's motion to compel production of the transcript of Mr. Cockerham's interview, the government effectively is contending that defendant's counsel has a right to "attend" plaintiff's pre-deposition interview of the witness. Plaintiff's counsel argues that the work product privilege applies because her questions to Mr. Cockerham reveal her mental impressions. In support, plaintiff cites *American Federal Bank, FSB v. United States*, 60 Fed. Cl. 493 (2004). In *American Federal Bank*, plaintiff's counsel moved to conduct confidential, witness interviews under the work product doctrine, and to bar government trial counsel from the interviews. *Id.* at 494, 496. The court in *American Federal Bank* concluded that there was no dispute that plaintiff's counsel sought to conduct the trial-preparation, witness interviews to develop counsel's trial presentations, "the disclosure of which would 'invad[e] the privacy of an attorney's course of preparation,' *Hickman* [*v. Taylor*], 329 U.S. [495,] 512 [67 S.Ct. 385, 91 L.Ed. 451 (1947) ], by revealing his or her 'mental impressions, personal beliefs,' and litigation strategies. *Id.* at 511 [67 S.Ct. 385]." *Am. Fed. Bank, FSB v. United States*, 60 Fed.Cl. at 498 (other citations omitted). The *American Federal Bank* court also found that: "the government has not attempted to make a showing of necessity, hardship, or injustice that might justify 'invading the privacy of an attorney's course of preparation.' *Hickman*, 329 U.S. at 512, 67 S.Ct. 385." *Am. Fed. Bank, FSB v. United States*, 60 Fed.Cl. at 498 (footnote omitted).

In seeking to protect the Cockerham interview transcript by claiming work product privilege, plaintiff also relies on the seminal, United States Supreme Court decision in *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451. In *Hickman*, respondent's counsel interviewed witnesses in anticipation of litigation, and petitioner sought the interview statements prepared by counsel, some signed by the witnesses. *Id.* at 498, 67 S.Ct. 385. The Supreme Court protected the interview statements from disclosure based on the attorney work product privilege:

> We are thus dealing with an attempt to secure the production of written statements and mental impressions contained in the files and the mind of the attorney Fortenbaugh without any showing of necessity or any indication or claim that denial of such production would unduly prejudice the preparation of petitioner's case or cause him any hardship or injustice. For aught that appears, the essence of what petitioner seeks either has been revealed to him already through the interrogatories or is readily available to him direct from the witnesses for the asking.
>
> . . .
>
> Here is simply an attempt, without purported necessity or justification, to secure written statements, private memoranda and personal recollections prepared or formed by an adverse party's counsel in the course of his legal duties. As such, it falls outside the arena of discovery and contravenes the public policy underlying the orderly prosecution and defense of legal claims. Not even the most liberal of discovery theories can justify unwarranted inquiries into the files and the mental impressions of an attorney.
>
> . . .
>
> Proper preparation of a client's case demands that he [the lawyer] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare

his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly though roughly termed by the Circuit Court of Appeals in this case (153 F.2d 212, 223) as the "Work product of the lawyer."

. . .

But the general policy against invading the privacy of an attorney's course of preparation is so well recognized and so essential to an orderly working of our system of legal procedure that a burden rests on the one who would invade that privacy to establish adequate reasons to justify production through a subpoena or court order. That burden, we believe, is necessarily implicit in the rules as now constituted.

. . .

No attempt was made to establish any reason why [the lawyer] should be forced to produce the written statements. There was only a naked, general demand for these materials as of right. . . . That was insufficient to justify discovery under these circumstances and the court should have sustained the refusal . . . to produce.

*Hickman v. Taylor*, 329 U.S. at 509–12, 67 S.Ct. 385 (footnote omitted).

In its filing with this court, defendant acknowledges that, "[g]enerally, interview notes drafted by counsel, 'as distinguished from verbatim transcripts or first-person statements, are properly treated as opinion work product because, in choosing what to write down and what to omit, a lawyer necessarily reveals his mental processes.'" (quoting *Office of Thrift Supervision v. Vinson & Elkins, LLP*, 168 F.R.D. 445, 447 (D.D.C. 1996)), *aff'd*, 124 F.3d 1304 (D.C.Cir.1997). Defendant argues, however, that "the verbatim transcript [of Mr. Cockerham's interview] recorded the words spoken by all present. These words are facts, not the mental

impressions of counsel and, therefore, the transcript is not work product."

The United States Court of Appeal for the Federal Circuit in *In re Seagate Technology*, however, did not limit work product to an attorney's mental impressions, nor did the United States District Court for the District of Columbia or the United States Court of Appeals for the District of Columbia Circuit in the case of *Office of Thrift Supervision v. Vinson & Elkins, LLP*. As quoted above, the Federal Circuit in *Seagate* made clear that the work product privilege is a qualified privilege which can be overcome by "need and undue hardship," depending on whether "the work product is factual, or the result of mental processes. . . ." *In re Seagate Tech., LLC*, 497 F.3d at 1375. Similarly, the United States District Court for the District of Columbia, in the case relied on by defendant, stated that:

> Courts have come to recognize that attorney work product encompasses a spectrum rather than a single genus, its character as such depending primarily upon the amount of lawyerly thinking involved in its compilation. But in the matter of deciding how much protection from discovery should be extended to work product they have generally divided it into two discrete classes: "ordinary" work product, or essentially unrefined factual information, and "opinion" work product, revealing the lawyer's mental impressions, legal theories, and conclusions. The former is, as a rule, more accessible to an inquiring adversary than the latter.

*Office of Thrift Supervision v. Vinson & Elkins, LLP*, 168 F.R.D. at 446 (footnote omitted). Describing the rules in the District of Columbia Circuit, the District Court found that for opinion work product, such as interview notes, production requires extraordinary justification if at all, a "'far stronger showing'" than required by the "'substantial need'" and "'without undue hardship'" standard for "ordinary" work product. *Id.* at 446–47 (citations omitted); *see also Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d at 1307 ("A party can discover fact work product upon showing a substantial need for the materials and an undue hard-

ship in acquiring the information any other way. Opinion work product, on the other hand, is virtually undiscoverable." (citing Fed.R.Civ.P. 26(b)(3) and *Upjohn Co. v. United States*, 449 U.S. at 401–02, 101 S.Ct. 677)). The District of Columbia Circuit affirmed the District Court, finding that sufficient need for the notes had not been shown based on either the "extraordinary justification" standard for opinion work product, or the "substantial need for the material, and undue hardship in acquiring the material by other means" standard. *Office of Thrift Supervision v. Vinson & Elkins, LLP*, 124 F.3d at 1307–08.

Since the interview of Mr. Cockerham was conducted in anticipation of litigation, defendant must show that it nevertheless has "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," RCFC 26(b)(3)(A)(ii). In this regard, plaintiff asserts that the government has interviewed Mr. Cockerham many times, although plaintiff does not know exactly how many times. Mr. Cockerham, who was investigated and ultimately prosecuted by the Department of Justice, is in federal custody. The Department of Justice, which now represents defendant in this action, has access to files to which the plaintiff does not have access, given that they were part of the contracts in which Mr. Cockerham was involved which led to his criminal prosecution. Although the defendant requested in this action that neither party interview Mr. Cockerham prior to his deposition, the court ruled that either counsel may interview Mr. Cockerham prior to his deposition. When defendant briefed the transcript production issue for the court, the Department of Justice did not offer information on how many interviews of Mr. Cockerham members of the Department of Justice had previously conducted. Nor did defendant address in its brief why any interviews it may have conducted and defendant's presence at Mr. Cockerham's deposition, which is about to be resumed, are insufficient as a "substantial equivalent" of the interview transcript it seeks, *see* RCFC 26(b)(3)(A)(ii). Given defendant's access to, and previous interactions with Mr. Cockerham, it would appear that through the instant discovery request for the transcript of plaintiff's counsel's interview of Mr. Cockerham, defendant effectively seeks access to plaintiff's counsel's mental impressions and work product, which it could do by analyzing the questions posed by counsel and the follow up questions to Mr. Cockerham's answers.

Defendant's brief also does not address why any previous interactions with Mr. Cockerham do not constitute the "substantial equivalent by other means," RCFC 26(b)(3)(A)(ii), of plaintiff's pre-deposition interview of Mr. Cockerham, a former government employee. Instead, defendant, in its brief, relies heavily on a United States District Court case, *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. 650 (D.Alaska 1994), which considered Fed.R.Civ.P. 26(b)(3)(A)(ii) (identical to RCFC 26(b)(3)(A)(ii)), as to whether the information sought by the defendant in the case could be obtained by other means. The District Court conclusion in *Dobbs* was that, "*on the particular facts of this case*, the court rejects the notion that defendant must make any showing of substantial need or inability to otherwise obtain the material beyond the showing already made and discussed above." *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. at 653 (emphasis added). Not only is the *Dobbs* case not precedential for the court, but it also is distinguishable.

In *Dobbs*, plaintiffs' counsel sent a questionnaire to potential class members. Defendant sought the verbatim answers to the questionnaire, to which the plaintiffs claimed the attorney work product privilege. *Id.* at 651. Plaintiffs in *Dobbs* suggested that defendant could obtain the substantial equivalent of the answers to the questionnaire through the alternative of depositions, but since there was a potential class, the court noted that depositions are "expensive," and that defendant "can and will be selective in whom it chooses to depose." *Id.* at 652. The court found other potential alternatives defendant could employ, such as depositions on written questions, to be "undesirable," and interrogatories, to have "practical problems." *Id.* The *Dobbs* court weighed the "other means" available to obtain the "substantial equivalent" of the information sought, and

found there was "undue hardship" associated with available alternatives, Fed.R.Civ.P. 26(b)(3)(A)(ii) (and RCFC 26(b)(3)(A)(ii)). *Dobbs v. Lamonts Apparel, Inc.*, 155 F.R.D. at 652–53.

In the present cases, however, defendant has had opportunities, and probably has conducted, or attempted to conduct, its own interviews of Mr. Cockerham. Defendant also attended the earlier portion of Mr. Cockerham's deposition, and will be present when the deposition reconvenes, with the opportunity to ask Mr. Cockerham its own set of questions. In the present cases, defendant has not demonstrated that it has not, or cannot, "without undue hardship, obtain" the "substantial equivalent by other means" of the interview transcript. RCFC 26(b)(3)(A)(ii).

### CONCLUSION

For the foregoing reasons, defendant's discovery request for the verbatim transcript of plaintiff's counsel's interview with Mr. Cockerham on October 19 and 20, 2010, is **DENIED**.

**IT IS SO ORDERED.**